[Civ. No. 6435.   Third Appellate District.—February 25, 1941.]

ANTONE LADAS et al., Appellants, v. JOHNSON'S BLACK AND WHITE TAXICAB COMPANY (a Corporation) et al., Respondents.

Busick & Busick for Appellants.

Butler, Van Dyke & Harris for Respondents.

PULLEN, P. J.—This action was for the recovery of damages for the death of Amelia Ladas, the wife of Antone Ladas, and the mother of Steve, Margaret and Athena Ladas. From a judgment in favor of defendants this appeal was taken.

About 9:30 P. M. on the 20th day of December, 1938, Amelia Ladas and her fifteen year old daughter, Margaret, alighted from a south bound street car at Tenth and V Streets in the city of Sacramento, and as they were proceeding easterly across the street, Mrs. Ladas was struck by a north bound taxicab driven by Wendell Danforth and belonging to

defendant Johnson's Black and White Taxi, a corporation. Mrs. Ladas died the next day from the injuries sustained.

The cause was tried by the court, sitting without a jury, and upon submission a judgment was rendered in favor of defendants, finding that defendants were guilty of negligence, but that the deceased had been guilty of contributory negligence. It is the contention of appellants that there is in the record no evidence of contributory negligence upon the part of the deceased, and that the judgment should be reversed.

Tenth Street is approximately 48 feet in width from curb to curb and runs north and south. In the street are two sets of car tracks, the most westerly rail of which is about 14 feet 10 inches from the westerly curb of Tenth Street. V Street, also 48 feet wide, runs east and west and crosses Tenth Street at a right angle. The pedestrian lanes upon these streets at this point are unmarked.

The driver testified that he was traveling north on Tenth Street "straddling the east rail of the car track", which was 14 feet 10 inches from the east curb of Tenth Street. It is undisputed that Mrs. Ladas was struck by the right front fender of the taxi and she was picked up at a point about 5 or 6 or 7 feet north of the northerly edge of the north pedestrian lane across Tenth Street, and about 7 feet west of the east curb line of Tenth Street.

In regard to other physical facts the court found:

"That it is true that on or about the 20th day of December, 1938, at or about the hour of 9:30 P. M. of said day, Amelia Ladas was walking in a general easterly direction across said Tenth Street, and at a point thereon immediately north of the intersection of Tenth and V Streets; that it is true that at said time the said Amelia Ladas was walking in a place provided for pedestrians to cross said 10th Street; that it is true that at said time and place defendant Wendell Danforth, while acting as the agent, servant and employee of Johnson's Black and White Taxi Company, a corporation, was driving and operating said Chevrolet automobile owned by defendant Johnson's Black and White Taxi Company, a corporation, in a careless and negligent manner and in a general northerly direction on and along said 10th Street with V Street, and across the crosswalk hereinbefore referred to."

The findings with reference to the conduct of Mrs. Ladas, the deceased, are:

"That it is not true that at the said time and place, the said Amelia Ladas was walking in a careful or prudent manner across said street, but on the contrary, the court expressly finds that at said time and place the said Amelia Ladas, although walking in a crosswalk, was herself careless and negligent, in that said Amelia Ladas, immediately prior to crossing said street, did alight from a southbound street car, and did thereafter, without exercising due or any care or caution whatever, step from behind said street car directly into the path of said automobile then and there being driven and operated by defendant Wendell Danforth, and in this regard the court further expressly finds that the said Amelia Ladas did then and there carelessly and negligently fail to maintain any lookout whatever for traffic proceeding along said street before stepping from behind said street car or before endeavoring to proceed across said street."

The issue then comes down to an examination of the entire record to see if there is substantial evidence to support the finding of contributory negligence on the part of Mrs. Ladas. The testimony of the taxi driver that she was attempting to cross the street at a point considerably north of the pedestrian lane need not be taken into account, for the court definitely found that in that particular his testimony was untrue and that she was in the pedestrian lane.

As to her acts and that of the driver of the taxi, the record discloses that she and her daughter alighted from the front entrance of a south bound street car. According to a Mr. Bergerson, also a passenger on the car, who alighted before Mrs. Ladas, the door of the street car from which they alighted was right in the crosswalk so one could look directly down V Street toward Ninth Street. Miss Bergerson, who also preceded Mrs. Ladas in alighting from the car, testified the car stopped just about the center of the pedestrian lane. Margaret Ladas testified the car stopped in the pedestrian lane. At any rate, the undisputed testimony was, the passengers alighted either within or practically within the pedestrian lane. The Bergersons, immediately upon alighting, crossed in front of the standing street car and proceeded easterly across Tenth Street. Mrs. Ladas and her daughter stood in the pedestrian lane and waited until the car started, and after it had passed them they also started easterly across Tenth Street, walking in the pedestrian lane and reached the center of Tenth Street. Margaret, who was walking on her mother's

left or on the side furthest from the oncoming taxi, testified she looked toward the south and then saw the lights of an oncoming automobile a considerable distance south on Tenth Street, but believing they had time to pass in front of the automobile, proceeded on their way across the street. At that time the taxi had not yet reached the south crosswalk. According to a map in evidence the daughter indicated the taxi, at the time they were in the center of the street, as approximately 40 feet south of the pedestrian lane on the south side of the intersection, which point would be about 64 feet from where the two women then stood. When Mrs. Ladas and her daughter reached a point some 15 or 16 feet easterly of the center of the street, the daughter again glanced to the right or south, and saw the car almost upon them. She took a big step but was struck by the taxi, throwing her about 6 feet northerly of the pedestrian lane with her feet in the gutter. Her mother was found lying about 5 feet north of the pedestrian lane, with her feet about 3 or 4 feet from the east curbing of Tenth Street. The cab, according to Mr. Bergerson, had come to a stop about 15 or 16 or 17 feet north of where Mrs. Ladas was lying. Mr. Bergerson, who, with his sister, had passed in front of the standing street car from which Mrs. Ladas and her daughter were alighting, continued easterly across Tenth Street, and then southerly along the easterly pedestrian lane across V. Street, had reached a point on the sidewalk at the southeasterly corner of Tenth and V Streets when he heard what sounded like a package drop. He turned around and saw someone lying in the street. He heard no automobile horn, nor the application of any brakes. All agree the entire intersection was well lighted by street lights.

Danforth, the driver of the cab, testified he was between the alley and V Street when he saw the street car at a stop. (The alley is 160 feet south of V Street.) He also testified as he was crossing the pedestrian lane he saw Mrs. Ladas walking out from behind the street car and they then started to run across the street in a sort of southeasterly direction, and he struck them with his right front fender, and that he was practically stopped when Mrs. Ladas struck his fender. He claims he did not knock either the mother or daughter any distance at all. According to the points indicated on the map in evidence the taxi driver indicated that it was about 12 feet from the point where he first saw the deceased emerge from behind the street car to the point of impact. During the time

it took these women, the elder of whom was 54 years of age, to travel that distance, they were at all times in view of the taxi driver. Mr. Butler, a civil engineer, by measurements, located a blood spot on the pavement (accepted as the place where Mrs. Ladas' head struck the pavement) as 7 feet northerly from the northerly edge of the crosswalk, and 6 feet easterly from the east rail of the street car track.

The foregoing is a summary of the material evidence bearing upon the case, and from such evidence we cannot find sufficient evidence to justify the holding of contributory negligence upon the part of the deceased.

It is to be noted that the taxicab was straddling the easterly rail of the car track and the deceased was struck by the right front fender of the taxi; in other words, according to the evidence, Mrs. Ladas traveled about 17 feet from the point where she alighted from the street car to the point of impact, and did not step directly into the path of the approaching taxi, as suggested by the findings in that regard. The driver of the taxi testified that when he first saw the street car come to a stop he was between the alley and V Street. He could not recall seeing anyone cross in front of the street car, but when he first saw Mrs. Ladas and her daughter they were walking out from behind the street car, the car then being in motion and clearing the pedestrian lane. He also testified Mrs. Ladas and her daughter were considerably north of the crosswalk. That has been found to be untrue. He admitted he did not sound his horn and that the intersection was well lighted. According to the points indicated upon the map by the driver of the taxi, Mrs. Ladas would have traveled about 12 feet while he was going 6 feet to the point of impact. He also testified he stopped at the instant of impact, but all the witnesses place his cab as 15 to 18 feet north of where Mrs. Ladas was picked up.

Analyzing the testimony as found by the court and as revealed by the physical facts the deceased and her daughter were in the pedestrian lane. They waited for the street car to move and travel far enough for the rear of the car to clear the pedestrian lane. They then started across the street and had reached a point beyond the most easterly street car rail, where they were struck by the right front fender of the taxi as it was straddling the easterly rail. The taxi, according to the driver, was traveling from 10 to 12 miles an hour when

he first saw Mrs. Ladas and her daughter. It does not appear when, if ever, he slackened that speed.

As said in *McGarry* v. *Coyle,* 120 Cal. App. 182 [7 Pac. (2d) 312]:

''There can be no question that it is the duty of an automobile operator approaching a street car which has stopped at a regular stopping place, to exercise very great care in passing to avoid injuring persons alighting from or seeking to board the car. Such operator in passing street car gates is bound at his peril to anticipate the probable sudden appearance of persons around the rear end of the car, and must give signals of his approach, and have his automobile under control as a precautionary measure to avoid injury to them.''

Plaintiff and her mother had a right to assume that operators of motor vehicles entering the intersection from the south would exercise a proper degree of care.

Section 560 of chapter 10 of the Vehicle Code, relating to pedestrians' rights and duties, provides:

''(a) The driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection, except as otherwise provided in this chapter.''

And by section 562 of the same code it is provided the driver is not relieved from the duty to exercise due care for the safety of any pedestrian upon the roadway.

In *Lowell* v. *Harris,* 24 Cal. App. (2d) 70 [74 Pac. (2d) 551], an action for the death of a pedestrian, the court said: ''Under the law, Mr. Lowell, in his use of the crosswalk, had the right of way; and while proceeding with ordinary care, he was justified in assuming in the absence of reasonable warning of danger, that his right of way would be respected. . . . Just what observation he made while so proceeding, concerning traffic approaching from the south is not known. He was not required in the exercise of his right of way to keep looking continuously to the south; . . . There being no definite evidence as to the precautions otherwise taken by him in his course, the presumption is that during his progress he used reasonable care and vigilance for his own safety. (Citing cases.) To ignore that presumption 'would be in effect to presume negligence on the part of one in excuse of negligence on the part of another.' (Citing cases.) If though he saw Wilson approaching from a distance, Mr. Lowell, as a

result of his observation, deemed himself secure in the protection of his right of way, or miscalculated the distance or the speed of the truck, he would not necessarily be chargeable with contributory negligence as a matter of law." (Citing and quoting from *White* v. *Davis,* 103 Cal. App. 531 [284 Pac. 1086].)

The record here indicates that the driver of the cab saw the street car stop at a street corner when he was between the alley and V Street; he saw two people emerge from the rear of the moving car; he recognized they were women, the younger woman on the outside; the street lights were lighted; the pedestrians were struck when they were within 10 or 12 feet of the easterly curb; he was traveling about 10 or 12 miles an hour, and stopped within 2 or 3 feet after striking Mrs. Ladas. These facts and circumstances give rise to the application of the last clear chance doctrine. In *Sego* v. *Southern Pac. Co.,* 137 Cal. 405 [70 Pac. 279], it is said:

"Generally, it is a defense to an action of tort that the plaintiff's negligence contributed to produce the injury. But in cases falling within the foregoing description, where the negligent acts of the parties are distinct and independent of each other, the act of the plaintiff preceding that of the defendant, it is considered that the plaintiff's conduct does not contribute to produce the injury, if, notwithstanding his negligence, the injury could have been avoided by the use of ordinary care at the time by the defendant.

"Defendant, knowing her danger did not use ordinary care in protecting her from danger. In that case, technically speaking, plaintiff was not guilty of contributory negligence, for her negligence did not proximately contribute to the injury. In cases of that character, it may be well said that the later negligence is the proximate cause of the injury, and that the earlier negligence of the party injured is too remote to be classed as contributory negligence."

The judgment must be reversed. It is so ordered.

Thompson, J., and Tuttle, J., concurred.

A petition for a rehearing was denied March 27, 1941, and respondents' petition for a hearing by the Supreme Court was denied April 24, 1941.