[Civ. No. 11811. First Dist., Div. Two. Feb. 17, 1942.]

HENRY LAFRENZ et al., Respondents, v. ELGIN STOD-
DARD, Appellant

Robert L. Lamb for Appellant.

Vincent W. Hallinan and Devine & Devine for Respondents.

DOOLING, J. pro tem.—Plaintiffs Henry Lafrenz and Rita Lafrenz, his wife, after a jury trial recovered judgment for personal injuries of $7,500 and $21,600 respectively. ▮ We cannot agree with appellant that the question of his negligence was a close one on the evidence or that the verdicts appeared to be excessive.

Respondents were crossing Harrison Street between Seventh and Eighth Streets in San Francisco in a legally established crosswalk at the intersection of Langton Street with Harrison. Before stepping off the curb they looked to their left toward Seventh Street, saw no vehicles approaching and waited until the traffic signal at Seventh Street turned red. When they reached the center of Harrison Street they stopped, looked to their right and saw no vehicles or headlights nearer than Eighth Street and proceeded. As they approached the south curb of Harrison Street they were struck by appellant's automobile. Appellant testified that

he did not see respondents until the instant before he struck them when he jammed on his brakes, killing his engine. He left skid marks on the pavement 29 feet in length and stopped in three or four car lengths, 48 to 64 feet. The accident occurred at about 5:50 p. m. on December 9, 1939; the pavement was dry, the headlights of appellant's automobile were on and the intersection was well lighted. Appellant's only explanation for not seeing respondents sooner was that they were "apparently hurrying as fast as they could and . . . Mr. Lafrenz was apparently trying to draw Mrs. Lafrenz after him as fast as they could go under the circumstances." The testimony of the respondents and the only other eye witness is that respondents were walking. In view of the duty cast upon appellant by section 560 of the Vehicle Code to yield the right of way to a pedestrian in a legally established crosswalk and his general duty to keep a look out for persons who might be lawfully using such crosswalk, his failure to see respondents in the crosswalk under the circumstances existing in this case could hardly be attributed to anything other than negligent inattention.

On the question of damages the evidence showed as to Henry Lafrenz that he was unable to rise from the street after the accident; was confined to a hospital for thirty-eight days; during the first two weeks was unable to move and had to be fed; suffered considerable pain and still suffers pain when he walks; had fractures of the third, fourth and fifth lumbar vertebrae and a tear of the ligaments between the fifth lumbar process and the sacrum and ilium; the fifth vertebral process is now fused to the sacrum; he has been deprived of about 20 per cent of motion of the lower back; there is a tendency to pull the whole spine off balance; he suffers from an incontinence of urine which necessitates his constantly wearing a pad and clamp; and his injuries are now permanent.

Respondent Rita Lafrenz had fractures of both bones in both legs below the knees and her legs are now permanently deformed so that the knees practically knock together at every step rendering it difficult for her to walk. She has pain in both ankles and legs particularly when walking; she was rendered unconscious and lost all recollection until some time in March 1940, when she first realized that she was in the San Francisco Hospital; a spinal puncture on the night of the accident disclosed gross blood in her spinal fluid; she was so

disoriented and irrational that she was removed to the psychopathic ward of the San Francisco Hospital for two weeks and still suffers from dizziness, pains in the head and faulty memory. Dr. Sooy who first saw her eleven months after her injuries were incurred expressed the opinion that she had suffered damage to the brain of a serious nature and that no further improvement can be expected. She was in the San Francisco Hospital over four months, and since has been at various sanitariums and the Laguna Honda Home. Her special damages for hospital and rest home care to the time of trial were $1,968. In view of the injuries received we cannot hold that the amounts of the verdict were not well justified.

Appellant cites no cases in support of his claim that the damages were excessive and we understand that he makes no contention that standing alone the damages allowed would justify a reversal. It is his position rather that in view of the closeness of the evidence on the question of liability and the amounts allowed for damages the errors which he alleges to have occurred on the trial must be held to have been prejudicial.

 Respondent Henry Lafrenz testified that some time after the accident appellant called on him at which time he stated:

"Mr. Lafrenz, I don't want you to worry too much. I am well insured and they will have to make good."

There was an immediate objection, assignment as misconduct, and motion for mistrial. The court instructed the jury to disregard the portion, "I am well insured" and admonished them that no insurance company is a party to this lawsuit, and further that the evidence was admitted only for the limited purpose of tending to show an admission of liability. This ruling was correct under the settled rule "that where a defendant makes a statement which may be fairly construed as an admission or acknowledgment of responsibility and as a part of the same statement makes incidental reference to the fact that he carries insurance, the entire statement is admissible, not to prove the fact of insurance, but solely because the reference to the insurance is part of the admission." (*North* v. *Vinton,* 17 Cal. App. (2d) 214, 219 [61 Pac. (2d) 950], and cases there cited; *McPhee* v. *Lavin,* 183 Cal. 264 [191 Pac. 23] ; *Weiner* v. *Mizuta,* 6 Cal. App. (2d) 142 [44

Pac. (2d) 421]; *Bamber* v. *Belprez*, 15 Cal. App. (2d) 110 [58 Pac. (2d) 1325].)

■ On direct examination of appellant the following question was asked by his own attorney and the following answer given:

"Did you ever say this to Mr. Lafrenz, 'Mr. Lafrenz, I don't want you to worry too much. I am well insured. They will have to make good.

"A. I did not."

On cross-examination counsel for respondents asked appellant:

"On the last trial, you heard Mr. Lafrenz testify on the witness stand that you said to him, 'Don't worry. I am well insured and they will have to make good.' "

After objection was overruled and without answer by the witness counsel for respondents asked about a conversation between appellant and respondent Mr. Lafrenz:

"Did Mr. Lafrenz say, 'One thing I am sore at you about is you are trying to make a liar out of me?'

"A. Yes."

After further objection and argument appellant was asked:

"Q. Please state what the rest of the conversation was as to what was stated, to your knowledge: 'You tried to make a liar out of me' and what your response was."

Another objection and more argument followed and the trial judge asked counsel to discuss the matter with him in chambers. In chambers counsel for respondents stated:

"At this time, in view of the court's doubt as to the admissibility of this evidence, I will withdraw the question. However, I want to state that the—and this is outside the presence of the jury, and in the court's chambers—that the purpose of asking the question was to elicit that when the plaintiff Lafrenz stated to the defendant Stoddard that he knew very well that he had made the statement that the insurance company would have to make good for his injuries, that Mr. Stoddard did not deny the accusation, but stated instead, 'Well, Mr. Lafrenz, I couldn't make them. I couldn't make the insurance company make good.' "

Upon returning to court the trial judge instructed the jury that the testimony elicited on that subject "shall be disregarded by the jury for all purposes."

The inquiry for the purpose stated by counsel was within the field of legitimate cross-examination. If appellant had ad-

mitted making such a statement it would have tended to impeach his testimony on the stand and would also have been independently relevant as an additional admission of liability. If he had denied making the statement Lafrenz could properly have testified to it for both purposes. The other questions asked were stated by counsel to be preliminary and we think properly allowed, but in any event the court promptly admonished the jury to disregard them for all purposes.

The fact that counsel for respondents abandoned the whole inquiry in deference to the doubt of the trial judge as to its propriety should put him in no worse position than if he had pursued it, as we believe he had a right to do. We cannot find on the record that any prejudice resulted to appellant.

Appellant proposed the following instruction from which the trial judge struck out the words which we have placed in parentheses:

"In your examination for the purpose of determining your fitness to act as jurors in this case, you were questioned concerning your interest in any casualty insurance company. This was merely for the purpose of determining your frame of mind.

"I instruct you that this is a case between the plaintiffs, Henry Lafrenz and Rita Lafrenz, on one hand and defendant, Elgin Stoddard, on the other. No insurance company is a party to (or interested in) this action."

While the giving of an instruction in the form proposed was held not to constitute error in *Brown* v. *Yocum*, 113 Cal. App. 621 [298 Pac. 845], the striking of the same words from a proposed instruction was expressly approved in *Elmore* v. *County of Lassen*, 10 Cal. App. (2d) 229 [51 Pac. (2d) 481]. It would seem the better practice not to go outside the record to instruct that no insurance company "is interested in" the case, but in any event we cannot hold that appellant suffered prejudice by the omission. The jury must be given credit for ordinary intelligence and we can perceive no other reasonable construction that they could put on the instruction as given than that they were not to consider the question of insurance in arriving at a verdict.

Complaint is made that respondents' counsel in his opening statement was guilty of prejudicial misconduct in referring to a police report, which he knew was inadmissible,

and afterwards made no effort to get into evidence, and in stating that respondent Rita Lafrenz became for a time insane as a result of her injuries and is obsessed with a terror that she may be declared insane and confined in an institution.

There was substantial proof of Mrs. Lafrenz's temporary insanity as a result of her injuries. Dr. Pinkham testified that "when she entered the ward shortly after surgery her condition was rather insane, she was completely irrational at times. . . . Later, I believe it was two months later, she was transferred to the psychopathic side because of her mental condition."

Dr. Poliak, a witness called by the defense who saw her in the psychopathic ward, found that "she was very confused and disoriented. She didn't know where she was . . . her talk was incoherent and irrational. She was seeing imaginary things, having hallucinations in other words . . . she didn't remember how she got in the hospital or what it was all about, and also what we call confabulating, telling stories that obviously were not true."

Dr. Poliak diagnosed her condition as Korsakoff's psychosis which is generally the result of alcoholism. However, the jury was not bound to accept this diagnosis. Dr. Sooy testified to a serious brain injury. Dr. Poliak's diagnosis was based on the patient's statement to him: "I asked her how much drinking she had been doing. At first she denied drinking at all; later she admitted drinking." Such an admission by a woman given to "confabulating" might well be regarded by the jury as another confabulation. There was no other evidence of Mrs. Lafrenz's addiction to the use of alcohol. Also Dr. Poliak testified that after further observation he made a few additional diagnoses. He made a diagnosis of cerebral arteriosclerosis. "Sometimes the vessels of the brain come hardened before other parts of the body,—and show a post-traumatic syndrome on her history of having been in an accident." Translated into layman's English Dr. Poliak found symptoms of traumatic effect upon the preexisting hardening of the brain arteries resulting in Mrs. Lafrenz's mental disturbance. Viewing the evidence as a whole the jury would be well justified in finding that she suffered from temporary insanity of several months duration as a result of injuries to her brain.

The jury was fully advised that the opening statement was

not evidence. Counsel for respondents prefaced his statement by saying: "What I am saying is not argument or evidence. . . . You understand in this opening statement the plaintiff will point out what he expects the evidence will show. You understand that is the entire purpose of an opening statement."

The trial court instructed the jury that they were to decide the case solely on the evidence and not to take arguments of counsel as evidence. It is hard to see how prejudice resulted. Any trial lawyer or judge at all experienced with juries knows that the making of positive claims that the evidence will show certain things followed by failure of proof on the subject is a two-edged sword apt to be more harmful to the one wielding it than to his opponent. Juries are frequently adversely impressed when proof falls short of promise, and the astute trial lawyer in his argument to the jury very often points out with telling effect the failure of his adversary to support by evidence the things which he forecast in his opening statement would be established.

It is only where the statements are inflammatory in character and calculated to blind the jury to the succeeding lack of proof that they will be found ordinarily to be prejudicial. The statements complained of here were not of that character.

 We think the rule applicable in such cases is correctly stated in *Prentis* v. *Bates,* 93 Mich. 234 [53 N. W. 153, 17 L. R. A. 494]:

"It must be an exceedingly plain case of an abuse of privilege which will justify the setting aside the verdict on the ground of improper opening either in statement of the law or fact. Nothing short of bad faith or a gross misconception of what is admissible, resulting in bringing to the attention of the jury matters wholly irrelevant, and of a nature calculated to create so profound an impression that the charge of the court cannot eliminate the prejudice produced, will justify an appellate court in vacating a judgment on such grounds; and, in determining whether such an error has been committed, it is believed to be entirely safe to credit the jury with at least average intelligence."

The same rule in substance is announced in *Mudrick* v. *Market Street Ry. Co.,* 11 Cal. (2d) 724, 737-8 [81 Pac. (2d) 950, 118 A. L. R. 533].

We find the verdicts amply supported by the evidence and

are satisfied that no prejudicial error occurred during the trial.

The judgments appealed from are affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing was denied March 19, 1942, and appellant's petition for a hearing by the Supreme Court was denied April 16, 1942.