[L. A. No. 22315. In Bank. June 30, 1953.]

MILTON F. GRAY et al., Appellants, v. VERD C. BRIN-
KERHOFF et al., Respondents.

Hirson & Horn and Theodore A. Horn for Appellants.

Joseph A. Zahradka and Robert Glines for Respondents.

SCHAUER, J.—Plaintiffs, who are husband and wife, appeal from an adverse judgment entered upon a jury verdict in their action for damages for personal injuries suffered by the wife when she was struck by a pickup truck driven by defendant Brinkerhoff in the course of his employment by defendant Nitzen. We have concluded that the evidence establishes negligence as a matter of law on the part of Brinkerhoff and is insufficient to support a finding of contributory negligence on the part of the wife, and that the judgment must therefore be reversed. Hereinafter in this opinion plaintiff-wife will be referred to as plaintiff, and Brinkerhoff will be referred to as defendant.

The evidence is without substantial conflict. At the time of the accident, plaintiff, carrying a bag of groceries, was attempting to walk across Manchester Boulevard, which runs in an east-west direction, at its intersection with Airport Boulevard, which runs north-south, in Los Angeles. Plaintiff waited on the curb at the southeast corner of the intersection until the traffic light changed from red to green for north-south traffic on Airport, so that she could lawfully proceed north across Manchester in the marked pedestrian crosswalk. The crosswalk was some 15 feet wide, and the distance from the curb, where plaintiff was standing, to an island located down the center of Manchester was about 30 feet. Defendant, who was driving south on Airport in a pickup truck, had stopped at the northwest corner of the intersection, also waiting for the green light; he was in the lane next to the center of Airport, as he intended to make a left turn onto Manchester. When the light changed to green, plaintiff started walking across Manchester in the crosswalk, and defendant started his truck, signaled his intention to make a left turn, and proceeded into the intersection. When he was about halfway across Manchester and before making his left turn, defendant again stopped his truck to permit another car, which was going north on Airport, to continue through the intersection. The other car, however, made a right turn into Manchester, and defendant then started his truck again, made his left turn, and drove into the crosswalk, striking plaintiff's shoulder with a "rack" attached over the left front fender of the truck, "pushing" her out of the crosswalk, and injuring her.

Plaintiff, while still waiting on the curb for the light to turn green, observed defendant's truck stopped at the intersection in the lane next to the center line of Airport, saw the truck start to move toward the south when the signal changed and plaintiff started north across Manchester, and watched its progress into the intersection. When plaintiff had gone about 10 feet from the curb, the truck was approaching the center of the intersection. When it reached the center of the intersection it was going about 5 miles an hour, and plaintiff realized at that time that it was going to make a left turn. When the truck, after stopping for the approaching car, had started again and was about 15 feet from the crosswalk plaintiff was some 10 feet from the island, walking "Approximately in the middle" of the crosswalk. When plaintiff was a step or two from the island the truck, which

both plaintiff and defendant testified was then going at a speed of 8 or 10 miles an hour, struck her. The truck moved 7 or 8 feet further ahead and then stopped. Plaintiff when first struck dropped her bag of groceries, seized hold of the rack above the fender in order not to be thrown under the truck, and receive repeated blows to her knees and shoulder as she "was being pushed back" out of the crosswalk. The weather and the street were dry and it was clear daylight at the time.

Plaintiff testified that she had been watching the truck almost continuously during her progress across the intersection; through the truck's windshield she saw both defendant driver and a coemploye who was riding with him and they seemed "to be looking in" her direction; when she "first realized that the truck was coming on the crosswalk . . . I tried to hurry to the island in the middle," although she did not run; she then had "perhaps a second" to "get out of the way"; she was then "about five feet" from the island; "I was in plain sight and . . . he looked like he would pass right behind me . . . [T]here wasn't room for him to go in front of me by that time."

Defendant testified that his windshield was clear; he did not see plaintiff at any time until after his "truck had actually impacted her," and he saw no other people in the crosswalk; after he stopped in the center of the intersection for the oncoming car, he was "looking east on Manchester" as he approached the crosswalk; there was nothing that would obstruct his view except the corner post on the truck as he was in the swing of the left turn; his brakes were in good condition.

 Whether or not defendant was guilty of negligence (see *Toschi* v. *Christian* (1944), 24 Cal.2d 354, 360 [149 P.2d 848]; *Mosley* v. *Arden Farms Co.* (1945), 26 Cal.2d 213, 217 [157 P.2d 372, 158 A.L.R. 872]; *Polk* v. *City of Los Angeles* (1945), 26 Cal.2d 519, 530 [159 P.2d 931]; 19 Cal.Jur. 731, and cases there cited) or plaintiff was guilty of contributory negligence (*Pewitt* v. *Riley* (1945), 27 Cal.2d 310, 316 [163 P.2d 873]; *Anthony* v. *Hobbie* (1945), 25 Cal.2d 814, 818 [155 P.2d 826], and cases there cited; see, also, 19 Cal.Jur. 735-738) is ordinarily a question of mixed fact and law and may be determined as a matter of law only if reasonable men following the law can draw but one conclusion from the evidence presented. (See, also, *Zibbell* v. *Southern Pac. Co.* (1911), 160 Cal. 237, 241 [116 P. 513]; *Reaugh* v. *Cudahy Packing Co.* (1922), 189 Cal. 335, 343 [208 P. 125]; *Young*

v. *Southern Pac. Co.* (1920), 182 Cal. 369, 375 [190 P. 36];
*Dennis* v. *Gonzales* (1949), 91 Cal.App.2d 203, 209 [205 P.2d
55].)

█ It is our view that defendant's own testimony shows
indubitably that he was guilty of negligence proximately
causing plaintiff's injuries. By the provisions of section 560,
subdivision (a), of the Vehicle Code, "The driver of a vehicle
shall yield the right of way to a pedestrian crossing the road-
way within any marked crosswalk. . . ." It is undisputed that
defendant did not yield the right of way to plaintiff. Such
failure constitutes a violation of the statute and negligence
as a matter of law in the absence of reasonable explanation for
defendant's conduct. (See *Satterlee* v. *Orange Glen School
Dist.* (1947), 29 Cal.2d 581, 589 [177 P.2d 279]; *Ornales* v.
*Wigger* (1950), 35 Cal.2d 474, 477-480 [218 P.2d 531]; *Finney*
v. *Wierman* (1942), 52 Cal.App.2d 282, 284 [126 P.2d 143];
*Lafrenz* v. *Stoddard* (1942), 50 Cal.App.2d 1, 4 [122 P.2d
374].)

█ Defendant in attempted excuse of his conduct sug-
gests that his "attention was diverted" by the "fast ap-
proaching car" which made a right turn into Manchester
instead of continuing north on Airport as defendant had
expected it to do. However, that vehicle after turning to
the right obviously constituted no hazard to defendant, who
had stopped in the center of the intersection to allow it to
pass, and provides no excuse whatsoever for his thereafter
starting his truck again, driving into the crosswalk without
seeing pedestrians who might be there, and striking plaintiff.
For a driver to cause or allow his vehicle to continue into
and across such a crosswalk while his attention is so "diverted"
constitutes in itself a violation of the statute for which he must
be held responsible.

Defendant suggests further that although his attention
was "diverted," nevertheless "while in his turn, the left
front corner post on the truck probably obscured his seeing"
plaintiff. Again, we are not impressed with this tentative
offering of an excuse. Under the circumstances shown it
appears to us that the evidence does not reasonably admit
of any conclusion other than that defendant could have ful-
filled his duty to look for pedestrians and could have seen
plaintiff if he had exercised ordinary care. █ He had no
right to assume that the crosswalk was clear (*People* v. *Lett*
(1947), 77 Cal.App.2d 917, 919 [177 P.2d 47]); it was his
duty in starting up and driving his vehicle into and through

the crosswalk to ascertain whether plainly visible pedestrians were using such crosswalk and it was his obligation to yield the right of way to them (*Fischer* v. *Keen* (1941), 43 Cal. App.2d 244, 249 [110 P.2d 693]). We hold that the evidence establishes that defendant was negligent as a matter of law.

█ It is equally apparent that plaintiff was free from negligence proximately contributing to her injuries. She was lawfully where pedestrians are expected to be found at intersections and until ''perhaps a second'' before the impact she had no reason to believe that defendant intended to violate her right of way and proceed into the crosswalk and against her body. Under such circumstances, she was not allowed sufficient time, and it does not appear that she was required, to ''run''[1] from his vehicle, as defendant (apparently seeking to invoke a sort of reverse last clear chance doctrine) suggests she should have done, although she did make an effort ''to hurry to the island in the middle.''

█ Defendant relies on the rule that ''Whether a mistake in judgment by a pedestrian when crossing a street, as to the speed and danger of an approaching vehicle constitutes contributory negligence is a question for the jury.'' (*Kirk* v. *Los Angeles Ry. Corp.* (1945), 26 Cal.2d 833, 839 [161 P.2d 673, 164 A.L.R. 1].) In the cited case the traffic signal changed after plaintiff pedestrian had started across the intersection; plaintiff's companions reached the far curb safely but plaintiff while hurrying to do the same dropped her purse and was struck by a streetcar when she stopped to pick it up. The judgment of nonsuit was reversed by this court with the statement that the matter of contributory negligence should have gone to the jury. In the case now presented, however, the only relevant mistake which plaintiff could have made as to the speed and danger of the approaching vehicle would be the belief that defendant driver intended to obey the law and not turn into and across the pedestrian crosswalk and strike her in complete disregard of her right of way. Defendant's vehicle, which had come to a complete stop in the center of the intersection and after starting again had at no time exceeded a speed of 8 to 10 miles an hour, obviously would give a reasonable pedestrian lawfully in the crosswalk no cause for apprehension that the speed of the vehicle constituted such an imminent danger that she should run from it. Under

---

[1] It may be noted that there are traffic signs in some localities which expressly direct pedestrians to ''WALK'' and do not suggest ''RUN.''

such circumstances we find no merit in defendant's argument that inasmuch as plaintiff had observed the truck from the time it left the center of the intersection until it struck her, her failure to increase her speed until ''perhaps a second'' before he pushed her out of the crosswalk could be considered to be contributory negligence. (See *LeBlanc* v. *Browne* (1947), 78 Cal.App.2d 63, 71-75 [177 P.2d 347].) Under the circumstances shown here, plaintiff had the right to assume that defendant driver would obey the law, drive in a reasonable manner, observe her right of way, and yield it. (See *Schulman* v. *Los Angeles Ry. Corp.* (1941), 44 Cal.App.2d 122, 126 [111 P.2d 924]; *Foerster* v. *Direito* (1946), 75 Cal. App.2d 323, 330-331 [170 P.2d 986]; *Ladas* v. *Johnson's B. & W. Taxicab Co.* (1941), 43 Cal.App.2d 223, 228 [110 P.2d 449].)

By reason of our conclusion that the evidence is insufficient to support the verdict, it becomes unnecessary to consider plaintiff's further contention that certain of the instructions given to the jury prejudically overemphasized her duty and minimized that of defendant.

The judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

Contrary to the majority opinion the issues of negligence and contributory negligence were for the jury, and its determination thereof against plaintiff is binding on this court. The evidence is such that reasonable minds could find either the presence or absence of the factors necessary to establish those issues.

The basis of the majority opinion is, on the issue of negligence, that defendant was required to yield the right of way to plaintiff and his failure to do so was negligence as a matter of law; on the issue of contributory negligence, that plaintiff was not required to run when she saw defendant's truck approaching and thus was free from contributory negligence as a matter of law. Those bases fail to take into consideration other factors which the jury could and did use as a basis for its verdict.

On the issue of negligence there are several significant facts upon which a finding of no negligence could be based. The intersection where the accident occurred was a busy one

and there was considerable traffic there at the time. This presented a situation where plaintiff was not the only person to be watched—toward whom care was to be exercised. Other hazards required constant attention by defendant with the accompanying necessity of making decisions governing his conduct. Whether his decisions were those of a person of ordinary prudence was a question for the jury. Defendant proceeded into the intersection with the "Go" signal as he was lawfully entitled to do. He gave proper signals for making a left turn which was legally authorized. He was travelling at a low rate of speed. As he was making a left turn and approaching the crosswalk which plaintiff was using, a car approaching at a high speed from his right swung right around the corner across his prospective route. That car crossed the crosswalk to the rear of plaintiff. It is reasonable to assume that defendant's attention would be focussed on that vehicle which would have a bearing on whether he was careless in failing to observe plaintiff in the crosswalk. Moreover, he may reasonably have assumed that, as that car proceeded across the crosswalk apparently without mishap, there was no one on the crosswalk. Defendant testified that he did not see plaintiff on the crosswalk. The jury could have believed that testimony. True, it could have disbelieved it, because plaintiff was there and there was evidence that plaintiff was looking in the direction of defendant's car, but that was the jury's function, not ours. There were reasons why the jury may have chosen to believe defendant. He testified that the upright support for the top, door and windshield of his car obscured his vision. His attention was diverted by the car which turned right into his path and led him into a sense of security by its crossing the crosswalk without mishap. There was a large amount of traffic at the intersection. Indeed the majority opinion is based on the theory that defendant was negligent in failing to see plaintiff because she was on the crosswalk, but that assumes that she was there. That assumption cannot be made because the jury could have disbelieved her testimony as to her presence in the crosswalk—at a point in the path of defendant's oncoming car. From testimony that defendant did not see her in the crosswalk when, if she was where she said she was, the jury could infer that she was not there; that she had reached the island in the center of the street, had become confused and stepped back into the path of defendant's car, or that she darted ahead across the path of defendant's car just as the right turning

car passed behind her. Of course, if defendant did not see plaintiff before the impact, and his failure to see her was not negligence, there is no basis for a finding of negligence in his failure to yield the right of way and the entire foundation of the majority opinion crumbles.

With reference to contributory negligence, there was sufficient from which the jury could find its existence. Plaintiff testified that she was watching defendant's car approaching all of the time. It could be inferred, therefore, that she walked directly into the path of an oncoming car and after taking that chance, made no effort to hurry or avoid being struck by the car. Moreover, as before discussed, the jury could have believed that defendant did not see her, that she darted in front of his car when the other car made a right turn behind her, or could have disbelieved her testimony that she was watching defendant's car and concluded that she walked across the crosswalk blindly and with total disregard of her safety. Based upon any of those premises or other possibilities, reasonable men could have concluded that she was guilty of contributory negligence.

Furthermore, the facts may have appeared to the jury in such a light as to justify the conclusion that neither plaintiff nor defendant was negligent—that the occurrence was what is sometimes called an "unavoidable accident" where no one is at fault and hence no recovery may be had.

In regard to yielding the right of way where a pedestrian was struck while crossing the street and defendant testified he did not see him, the court said in *Edwards* v. *McCormick*, 79 Cal.App.2d 800, 804 [181 P.2d 58] : "In the instant case, as commented upon in respondents' brief, 'It was for the jury to decide whether respondent's failure to see the deceased was a negligent failure. His failure to yield the right of way arose from his failure to see the pedestrian before he did; the two are inextricably intertwined. Hence it would have been an invasion of the province of the jury for the court to have laid down an inflexible rule that if respondent did not yield the right of way he was negligent as a matter of law.' Under the evidence disclosed by the record, negligence and contributory negligence were questions of fact and not of law. . . .

"The appellants insist that 'The verdict and judgment are against the law, in that deceased had a right to assume defendant would obey the law (and yield the right of way), and in that deceased being confronted by a sudden peril he was not guilty of contributory negligence in attempting to pass in

front of defendant's automobile.' It is also argued that 'plaintiffs are entitled to the benefit of the presumption that the deceased obeyed the law in that he exercised ordinary care for his own safety and therefore the verdict was against the evidence if the defendant was guilty of negligence.' These contentions, however, proceed on the assumption that the defendant was, and the deceased was not, guilty of negligence in the situation presented. And, as already indicated, such matters involve questions of fact, not of law. Neither a presumption of due care on the part of the deceased, nor any right to assume that respondent driver would yield the right of way, can alter this situation, —or, in fact, do more than merely raise a conflict in the evidence. As pointed out in respondents' brief, 'It is clear that a pedestrian has no privilege of relying on right of way blindly or in the face of obvious danger.' (*Fischer* v. *Keen*, 43 Cal.App.2d 244 [110 P.2d 693]; *Reed* v. *Stroh*, 54 Cal.App.2d 183 [128 P.2d 829].)'' (See *Bedell* v. *Duniven*, 77 Cal.App.2d 145 [174 P.2d 666]; *O'Brien* v. *Schellberg*, 59 Cal.App.2d 764 [140 P.2d 159].)

The conclusion reached by the majority here must be based upon the unqualified assumption that all of the testimony of plaintiff is true and that at least some of defendant's testimony is false. Thus the majority is weighing the evidence, without seeing the witnesses or hearing them testify, thereby invading the exclusive province of the triers of fact—the jury and trial judge. The position of the majority here is not only out of harmony with the settled law of this state (see *Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689]; *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427 [45 P.2d 183]), but it places an undue burden upon this court—that of deciding issues of fact. I have heretofore adverted to the evils of this practice (see concurring and dissenting opinions in *Daniels* v. *City and County of San Francisco*, 40 Cal.2d 614, 627 [255 P.2d 785]; *Saporito* v. *Purex Corp., Ltd.*, 40 Cal.2d 608, 612 [255 P.2d 7]; *Barrett* v. *City of Claremont*, *ante*, p. 70, 75 [256 P.2d 977]). So far as this court is concerned, it is of recent development—just the last year or two (see *Rodabaugh* v. *Tekus*, 39 Cal.2d 290 [246 P.2d 663]; *Hawaiian Pineapple Co.* v. *Industrial Acc. Com.*, 40 Cal.2d 656 [225 P.2d 431]; *Better Food Mkts.* v. *American Dist. Teleg. Co.*, 40 Cal.2d 179 [253 P.2d 10]; *Atkinson* v. *Pacific Fire Extinguisher Co.*, 40 Cal.2d 192 [253 P.2d 18]; *Sutter Butte Canal Co.* v. *Industrial Acc. Com.*, 40 Cal.2d 139 [251

P.2d 975] ; *Mercer-Fraser Co.* v. *Industrial Acc. Com.,* 40 Cal.2d 102 [251 P.2d 955] ; *Gill* v. *Hearst Publishing Co.,* 40 Cal.2d 224 [253 P.2d 441] ; *Goodman* v. *Harris,* 40 Cal.2d 254 [253 P.2d 447] ; *Pirkle* v. *Oakdale Union etc. School Dist.,* 40 Cal.2d 207 [253 P.2d 1] ; *Burtis* v. *Universal Pictures Co., Inc.,* 40 Cal.2d 823 [256 P.2d 933] ; *Kurlan* v. *Columbia Broadcasting System,* 40 Cal.2d 799 [256 P.2d 962] ; *Weitzenkorn* v. *Lesser,* 40 Cal.2d 778 [256 P.2d 947] ; *Turner* v. *Mellon, ante,* p. 45 [257 P.2d 15] ; *Barrett* v. *City of Claremont, ante,* p. 70 [256 P.2d 977] ; *Estate of Lingenfelter,* 38 Cal.2d 571 [241 P.2d 990]). I cannot refrain from again reiterating that this practice is not only in direct violation of the constitutional right of litigants to trial by jury, but is an insidious abuse of the judicial process.

About 10 years ago (December 1, 1943), Mr. Justice Schauer in speaking for the majority of this court took a position diametrically opposed to the position now taken by him in the case at bar. As author of the majority opinion in *Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689], he clearly and forcefully restated the traditional rule with respect to the function of this court and the District Courts of Appeal in reviewing findings of a trial court or jury. I concurred with Mr. Justice Schauer in the views expressed in that opinion and still believe that it should be the law of this state. I quote his pertinent language in that case and commend it to his consideration in reaching a conclusion in the case at bar. In *Estate of Bristol* Mr. Justice Schauer stated at pages 223 and 224 as follows: ''The rules of evidence, the weight to be accorded to the evidence, and the province of a reviewing court, are the same in a will contest as in any other civil case. (*Estate of Snowball* (1910), 157 Cal. 301, 305 [107 P. 598] ; *Estate of Barr* (1924), 69 Cal.App. 16, 33 [230 P. 181].) The rule as to our province is: 'In reviewing the evidence . . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary . . . principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' (Italics added.) (*Craw-*

*ford* v. *Southern Pac. Co.* (1935), 3 Cal.2d 427, 429 [45 P.2d 183].) The rule quoted is as applicable in reviewing the findings of a judge as it is when considering a jury's verdict. The critical word in the definition is *'substantial'*; it is a door which can lead as readily to abuse as to practical or enlightened justice. *It is common knowledge among judges and lawyers that many cases are determined to the entire satisfaction of trial judges or juries, on their factual issues, by evidence which is overwhelming in its persuasiveness but which may appear relatively unsubstantial—if it can be reflected at all—in a phonographic record. Appellate courts, therefore, if there be any reasonable doubt as to the sufficiency of the evidence to sustain a finding, should resolve that doubt in favor of the finding;* and in searching the record and exploring the inferences which may arise from what is found there, to discover whether such doubt or conflict exists, the court should be realistic and practical. Upon such view of the law we cannot hold that any essential finding in this case is unsupported." (Emphasis added.)

In some of my dissenting opinions I have called attention to the long established rule that it is only in cases where the uncontradicted evidence is such that reasonable minds cannot differ, that the issues of negligence and contributory negligence may be decided as issues of law. Heretofore the majority have not seen fit to discuss this rule, but have ignored it by the simple process of arbitrarily disregarding the determination of the trier of fact and holding as a matter of law that the evidence supporting such determination was insufficient (see *Rodabaugh* v. *Tekus, supra; Better Food Mkts.* v. *American Dist. Teleg. Co., supra; Atkinson* v. *Pacific Fire Extinguisher Co., supra; Goodman* v. *Harris, supra; Pirkle* v. *Oakdale Union etc. School Dist., supra; Burtis* v. *Universal Pictures Co., Inc., supra; Turner* v. *Mellon, supra; Barrett* v. *City of Claremont, supra*). Here, however, the majority cites the cases which have established the rule, and then misstates it and refuses to apply it to this case. In this connection the majority opinion states: "Whether or not defendant was guilty of negligence [citing cases] or plaintiff was guilty of contributory negligence [citing cases] is ordinarily a question of mixed fact and law and may be determined as a matter of law only if reasonable men following the law can draw but one conclusion from the evidence presented." The foregoing is not a correct statement of the rule.

While the statement of the rule has been couched in different language in some of the cases, it has been repeatedly declared as follows: " 'It is only where no fact is left in doubt, and no deduction or inference other than negligence can be drawn by the jury from the evidence, that the court can say, as a matter of law, that contributory negligence is established. Even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury.' (*Johnson* v. *Southern Pacific R. R. Co.*, 154 Cal. 285 [97 P. 520]; *Seller* v. *Market St. Ry. Co.*, 139 Cal. 268 [72 P. 1006]; *Herbert* v. *Southern Pacific Co.*, 121 Cal. 227 [53 P. 651].)" (*Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237, 241 [116 P. 513].) What the majority here mean by the phrase, *"reasonable men following the law"* is not clear. However, by its attempted application of the rule to this case, I assume that the majority mean that those Justices who constitute the present majority of this court are the *only "reasonable men following the law"* who have passed on the issues in this case. If that is what the majority intend to imply, and I can conceive of no other meaning, then I resent the implication both on behalf of the members of the jury, the learned trial judge and the three able and honorable members of the District Court of Appeal (see *Gray* v. *Brinkerhoff* (Cal.App.) 249 P.2d 571) as well as for myself, all of whom disagree with the conclusion reached by the majority of this court in this case. According to the majority none of the above persons is a reasonable person following the law.

I have no hesitancy in stating that I am not at all chagrined to be so classified by the majority of this court, as I am confident that neither unbiased contemporary observers nor posterity will sanction the distortions to which the majority of this court has resorted in its attempt to justify its invasion of the fact finding functions of the jury and trial judge. I feel rather that those who believe in the democratic process may properly but regretfully refer to this period in our judicial history as the era when the Supreme Court of California assumed the role of the fact finder in negligence cases.

I have examined the record in this case and find no error prejudicial to plaintiff.

I would, therefore, affirm the judgment.