[Civ. No. 24475.   First Dist., Div. Three.   May 29, 1968.]

IAN MYERS, Plaintiff and Appellant, v. JOHN C. CARINI et al., Defendants and Respondents.

Garry, Dreyfus, McTernan & Brotsky, Charles R. Garry and Donald L. A. Kerson for Plaintiff and Appellant.

L. F. Haeberle III and Robert T. Lynch for Defendants and Respondents.

SALSMAN, J.—This is an appeal by Ian Myers from a judgment in favor of respondents John and Joseph Carini after trial by jury of appellant's action to recover damages for personal injuries.

The record supports the following statement of facts: Appellant, a pedestrian, was standing on the north side of Market Street at Sixth in San Francisco. At this intersection, Sixth Street enters Market Street from the south, but does not continue north beyond Market. Appellant intended to walk

south across Market to Sixth. He waited for the pedestrian traffic control signal to change to "walk."

Respondent John Carini, driving a vehicle owned by Joseph Carini, was proceeding west on Market Street. He entered the intersection on a green light, but before he could clear the intersection the traffic light facing him turned red, and at about the same time the light facing appellant flashed "walk" for pedestrians. There was some testimony that appellant had advanced about 5 feet from the north curb of Market before the signal for him changed to "walk." After taking a few steps in the crosswalk and intersection, appellant came into contact with respondents' car. Appellant said he saw no cars in the intersection when he started across, but put up his hand to ward off a vehicle as it approached, and was knocked over. A police officer testified that respondents' car was in the center of the intersection when the traffic light facing him turned yellow, and that the speed of the car was about 10 miles per hour.

Respondent John Carini testified that he entered the intersection on a green light; that his speed was 10 to 15 miles per hour; that he saw a pedestrian coming toward his car, and that the pedestrian came into contact with the right front fender of the vehicle.

■ Appellant's first contention is that the trial court erred in failing to instruct the jury that a pedestrian in a marked crosswalk, proceeding on a "walk" signal, has the right of way over vehicular cross-traffic.

Vehicle Code section 21451 reads as follows:[1] "Green alone or 'go' on an official traffic control signal means that: (a) Vehicular traffic facing the signal shall proceed straight through or may turn right or left. Traffic may make a semicircular or U-turn only where such turn is permitted by signs erected at such location. But vehicular traffic, including vehicles turning right or left, shall yield the right-of-way to other vehicles and to pedestrians which were lawfully within the intersection or an adjacent crosswalk at the time such signal was first exhibited. (b) Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk, but shall yield the right-of-way to all vehicles which were lawfully within the intersection at the time such signal was first exhibited."

Section 21456 reads: "Whenever an official traffic control

---

[1]All section references hereafter stated are to the Vehicle Code unless otherwise noted.

signal exhibiting the words 'walk' or 'wait' or 'don't walk' are in place, the signals shall indicate as follows: (a) Walk. A pedestrian facing the signal may proceed across the roadway in the direction of the signal or in a diagonal direction across the roadway within the intersection if so instructed by signs or signals installed at or near the intersection. (b) Wait or Don't Walk. No pedestrian shall start to cross the roadway in the direction of such signal, but any pedestrian who has partially completed his crossing on the 'walk' signal shall proceed to a sidewalk, safety zone or island while the 'wait' or 'don't walk' signal is showing.''

Section 21456.1 reads: ''Whenever an official traffic control signal exhibiting the words 'walk' or 'wait' or 'don't walk' is shown concurrently with official traffic control signals exhibiting the words, 'go,' 'caution' or 'stop,' or exhibiting different colored lights successively, one at a time or with arrows, a pedestrian facing such traffic control signals shall obey the 'walk,' 'wait' or 'don't walk' control signal as provided in Section 21456.''

At the time of the accident, section 21950 read: ''The driver of a vehicle shall yield the right-of-way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection, except as otherwise provided in this chapter.'' (Stats. 1959, ch. 3, § 21950, p. 1687; amended Stats. 1965, ch. 1265, § 1, p. 3140.)

There is no dispute that appellant was in the crosswalk at the time of impact and it is also clear that he was proceeding on a ''walk'' signal at the moment he was hit. He contends that section 21950 gave him the right-of-way, and that respondent John Carini's failure to yield to him was negligence. The jury was instructed in the language of section 21950, but the court also instructed in the language of section 21451, subdivision (b), which requires pedestrians facing a green light to yield to vehicles lawfully within the intersection at the time the pedestrian signal is first exhibited.

Appellant contends it was error to call the jury's attention to section 21451, subdivision (b) because his conduct was not governed by that section of the code, since he was obeying a ''walk'' signal rather than a green traffic light. He argues that his rights at the time and place of the accident stem from section 21950, and section 21456, which latter section, unlike section 21451, does not expressly provide that a pedestrian using a crosswalk on a ''walk'' signal must yield to vehicles

lawfully within the intersection. Appellant's argument is not convincing.

The Legislature has not spoken as to whether a pedestrian crossing the street pursuant to a "walk" light has a duty to yield to vehicular cross-traffic which entered the intersection before the "walk" signal is given. Section 21456.1 only requires that pedestrians obey the "walk" and "wait" signals where provided, rather than obey the red, green and amber lights provided for vehicles. Section 21950 requires a driver to yield to a pedestrian in a crosswalk ". . . except as otherwise provided in this chapter." And section 21456 itself merely states that the pedestrian "*may*" proceed when the "walk" sign is on. The Legislature has, however, expressly provided that vehicles and pedestrians crossing pursuant to a *green* traffic light must wait until cross-traffic which lawfully entered the intersection has cleared it. Thus, the question before us is whether a different rule for those crossing pursuant to a "walk" sign was intended.

The statutory history provides some guidance. Prior to 1959, when the Vehicle Code of 1935 was revised and renumbered, the predecessor of section 21456 provided that the pedestrian facing the "walk" signal ". . . may proceed across the roadway in the direction of the signal *and drivers of vehicles shall yield the right of way to such pedestrian.*" (Veh. Code 1935, § 476.1; Stats. 1953, ch. 848, § 2, p. 2177; italics added.) In the 1959 code, however, the emphasized words were dropped. Section 21456 now provides merely that the pedestrian ". . . may proceed across the roadway in the direction of the signal or in a diagonal direction . . ." if the intersection is so marked. In the course of the same recodification, the predecessor of section 21451, subdivision (b) was carried over intact from the 1935 code. It read: "Pedestrians facing the [green or 'go'] signal may proceed across the roadway within any marked or unmarked crosswalk." (Stats. 1959, ch. 3, § 21451, pp. 1674-1675.) Shortly before section 21451, subdivision (b) was to become effective, however, the Legislature amended it to read: "Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk, *but shall yield the right-of-way to all vehicles which were lawfully within the intersection at the time such signal was first exhibited.*" (Stats. 1959, ch. 971, § 1, p. 3002; italics added.) Since the Legislature repealed the section expressly giving the pedestrian the right-of-way (when crossing pursuant to a "walk" light) and added lan-

guage expressly giving the driver the right-of-way when the pedestrian is crossing pursuant to a green light, we conclude that the Legislature meant to abolish its old rule granting the pedestrian an absolute right-of-way in favor of a new rule requiring him to wait until cross-traffic clears the intersection.

We think it unlikely that the Legislature desired separate rules to apply to pedestrians crossing pursuant to ''walk'' lights and pedestrians obeying green lights. Such a construction would place upon the driver of a vehicle the unreasonable and unnecessary burden of ascertaining whether the pedestrian was crossing pursuant to a ''walk'' signal or a green light in order to determine who has the right-of-way. In light of these factors, therefore, we conclude that sections 21451 and 21456 should be read together, and that together they lay down the rule that a pedestrian crossing an intersection pursuant to a ''walk'' signal must yield the right-of-way to the driver of a vehicle lawfully within the intersection at the time the ''walk'' signal is first exhibited. In thus construing these sections of the Vehicle Code we do not depart in the slightest from the fundamental rule that every person is bound to use due care at all times, and to refrain from injuring the person or property of another. (Civ. Code, § 1708.)

Appellant further argues that no instruction on contributory negligence should have been given because there was no evidence to support it. But there was such evidence. The testimony of one witness was such that the jury could infer from it that appellant stepped off the curb and was partially out into Market Street before the signal flashed ''walk.'' There was also the evidence that appellant looked in the direction of, but did not see, respondents' car at a time when the car was near. A traffic officer testified that respondents' car was only 20 to 25 feet from the crosswalk when the signal changed to red, which undoubtedly was at or about the time appellant received the ''walk'' signal. Contributory negligence is generally a mixed question of law and fact. (*Gray* v. *Brinkerhoff,* 41 Cal.2d 180, 183, 184 [258 P.2d 834].)

On the evidence recited it was proper for the trial judge to submit the issue of appellant's negligence to the jury, under proper instructions.

Next, appellant attempts the heroic argument that we should set aside the entire doctrine of contributory negligence in personal injury actions, as harsh, outmoded and unfair. (See *Pope & Talbot, Inc.* v. *Hawn,* 346 U.S. 406, 408-409 [98 L.Ed. 143, 150-151, 74 S.Ct. 202] ; James, *Contributory Neg-*

*ligence* (1953) 62 Yale L.J., 691, 692; Leflar, *The Declining Defense of Contributory Negligence* (1946) 1 Ark. L.Rev. 1.) But the doctrine is clear and long established in our jurisprudence and we, of course, have no power to depart from it. As intermediate appellate judges we make up the Light Brigade in the army of the judiciary. We look down for the facts and up for the law. Where the rule is explicit, as it is here, it is not ours " . . . to reason why."[2] Brilliant concept or grievous blunder, we must accept it as it is given to us by higher authority. Indeed, we have no jurisdiction to do otherwise. (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Finally, we agree with appellant that the instruction on imminent peril should not have been given. We see no evidence in the record to show that respondent John Carini discovered any danger until almost the instant of impact, or that he did any act or took any particular course of action under the influence of peril. Yet, despite the fact that the instruction was inapplicable, we do not think the jury was confused by it, or that the instruction contributed in any way to the final verdict. If the jury had found respondents liable, it is unlikely they would then have excused such liability because of the instruction on imminent peril, especially where there was no evidence to which the jury could have applied the instruction.

The judgment is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.

---

[2]Alfred, Lord Tennyson, "The Charge of the Light Brigade."