Filed 11/10/14  Vitushkina v. Luminalt Energy Corp. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BELLA VITUSHKINA,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>LUMINALT ENERGY CORP.,<br><br>        Defendant and Respondent. | A140393<br><br>(San Francisco County<br>Super. Ct. No. CGC-12-527167) |

In this personal injury action, Bella Vitushkina appeals from a judgment upon a jury verdict rendered in favor of defendant Luminalt Energy Corp.  Vitushkina contends that the trial court: (1) erroneously admitted expert witness testimony that relied on inadmissible hearsay statements; (2) erred in its instructions to the jury; and (3) improperly denied her motions for a directed verdict, and judgment notwithstanding the verdict (JNOV).  We affirm.

## I.  FACTUAL BACKGROUND

On April 12, 2011, Vitushkina met Casey Kuznetsova, her granddaughter, for lunch at the Squat and Gobble restaurant on Market Street near Noe Street in San Francisco.  They met around noon for lunch and Kuznetsova stayed at the restaurant for about 50 minutes before leaving to go back to school.  Vitushkina told Kuznetsova that she intended to go home after lunch.

Vitushkina left the restaurant shortly after Kuznetsova and walked home, crossing Market Street and walking down Noe Street on the right side of the street.  She walked down Noe Street toward the intersection of 17th Street and Noe Street, about a block

1

from the restaurant.  It took her about five to 15 minutes to walk the block.  She proceeded to cross the intersection, entering the crosswalk.  Vitushkina testified that she took two or three steps into the crosswalk when she was hit by a van.  Prior to entering the crosswalk, she did not see any oncoming traffic and did not see the van that hit her.

Officer George Fogarty testified as an expert in traffic accident investigation. Fogarty had 32 years experience in investigating traffic collisions, and it was his area of focus for the last 12 years prior to his retirement in August 2012.  Fogarty, however, was not an expert in accident reconstruction.

On April 12, 2011, Fogarty was dispatched to the scene to investigate the accident which occurred at approximately 3:43 p.m.  When he arrived, there were other officers present who were "holding" the scene to prevent any tampering.  The paramedics had already responded and taken the victim to the hospital.  Joseph Franko, an eyewitness, had given a statement to officers prior to Fogarty's arrival and had left the scene.  Fogarty found a pair of shoes inside the crosswalk and a pool of blood on the roadway within a couple of feet of the crosswalk.  He interviewed the driver of the van and obtained a statement.[1]

After speaking with the driver, Fogarty noticed a thin layer of dirt covering the entire van with the exception of one particular part where the dirt had been cleared off at the left front of the van.  He surmised, after speaking with the driver, that the area where the dirt was cleared off was where the van had made contact with victim.  In his report, he concluded that the accident occurred when the van, travelling westbound on 17th Street and making a left turn to southbound Noe Street, made contact with Vitushkina just inside the crosswalk.  At the time, Vitushkina was crossing Noe Street from west to east.  Fogarty determined that Vitushkina was walking eastbound and that she must have come out from between parked cars on the street because neither the driver of the van nor Franko, the eyewitness, saw her.  He opined that as she crossed the street, she was in the van's blind spot because the van was in the process of turning left and neither the van's

_____

[1] The driver died prior to trial.

driver nor Franko, saw her. The driver said he heard a bump on the left front of the van. Fogarty noted on the police report that the driver violated Vehicle Code section 21950 — failure to yield to a pedestrian in the crosswalk — but did not cite him.

Franko, a real estate appraiser, testified that he was near the intersection of 17th and Noe Streets on April 12, 2011 at about 4:00 p.m. when he saw the accident. He was driving on 17th Street going westbound. As he approached the intersection, his car was immediately behind a van that was in the process of making a left turn onto Noe Street. He saw Vitushkina, an elderly woman, as she was "sideswiped or run over" by the rear portion of the van. He honked his car's horn and yelled to the driver of the van, telling him to stop. The driver of the van stopped. Franko could not remember whether Vitushkina was fully in the crosswalk. He did not see the point of impact nor did he see from where Vitushkina was travelling.

Franko recalled seeing one of Vitushkina's shoes in the crosswalk. He saw blood on her leg. He provided a statement to the police about ten to 20 minutes after the accident. He told the police that he thought Vitushkina came out to the street from between two parked cars. He testified that there was a white truck parked on Noe Street facing 17th Street that was flush with the crosswalk and Vitushkina might have come into the street behind the truck. Vitushkina landed on her back with her legs facing northbound and her face was looking toward the side of the van. She was lying close to the left side of the van by the rear tire. The driver told Franko that he had not seen Vitushkina.

Kirsten White, an expert in biomechanics and accident reconstruction, testified on behalf of Luminalt. White reviewed the medical records, the police report, the statements of the driver and Franko, and the depositions of Franko, Edward Rubinstein,[2] Vitushkina, and Fogarty. She inspected the intersection, took photographs and measurements from the scene from which she was able to scale an aerial image of the intersection. She also reviewed the geometric and weight values for the van involved in the accident and

[2] Rubinstein was Vitushkina's podiatrist.

3

scientific literature regarding walking speeds of female pedestrians over the age of 65, stopping distances for pedestrians, and studies of acceleration rates for vehicles and vans making left turns at intersections. She performed mathematical calculations regarding the time it takes a vehicle or a pedestrian to cover a particular distance and acceleration rates and resulting vehicle speeds over distances. Finally, she used calculations to perform a computer simulation of a van making a left turn at the intersection and inspected the van involved in the accident including taking measurements and photographs.[3]

Based on her review, White opined that Vitushkina was walking westbound across Noe Street and that she was facing the left side of the van when the accident occurred. She further opined, in view of the physical and medical evidence, that the van's wheels were the only portion of the van which were sufficiently low to the ground to cause the crush-type injuries Vitushkina sustained to her feet. She therefore concluded that the injuries to Vitushkina's feet were inconsistent with an impact with the front of the van. In addition, citing Franko's testimony that he saw her interact with the left side of the van, she believed that Vitushkina's injuries were consistent with an impact with the left rear wheel of the van. She also relied on the driver's statement that he thought the left rear wheel of the van had hit Vitushkina. She thus determined that Vitushkina was facing the left side of the van when she was struck by the van. White concluded that the driver's statement that he believed his left rear wheel made contact with the victim was consistent with Franko's description that he first saw Vitushkina approximately halfway down the left side of the van during the accident.

On cross-examination, White admitted that the police report noted that the driver of the van failed to yield the right-of-way to a pedestrian in violation of Vehicle Code section 21590, subdivision (a) but that the driver was not cited. She did not rely on that violation in formulating her opinion in the case, but rather her analysis was based primarily on the physical evidence. She also opined that the smudge mark on the left

---

[3] Slides showing a computer simulation of a van making a left turn into an intersection were shown to the jury.

4

front panel of the van, which Fogarty believed to be the initial contact point in the accident, was not consistent with Vitushkina's injuries.

Dr. James Stark, testified as a specialist in physical medicine and rehabilitation. He examined Vitushkina and reviewed her medical records. Vitushkina suffered injuries to her head, neck, upper extremities, lumbar spine, hips, knees, ankles and feet, and was in extreme pain. As a result of the accident, she was now unable to live independently, was diabetic, and was extremely limited with regard to her mobility — she could walk very short distances and only with great pain. She sustained fractures to the third and fourth fingers of her left hand, injuries to the skin on top of her feet, particularly the left foot, and a non-displaced fracture of her left distal fibula — the small bone in the lower leg on the outside. Dr. Stark opined that the injuries to Vitushkina's feet were consistent with coming into contact with a tire.

## II. DISCUSSION

Vitushkina contends that the trial court abused its discretion by permitting White to give opinions based on the hearsay statements of witnesses. She also argues that the court erred in allowing White to offer opinions upon hypotheticals and that her opinions invaded the province of the jury.

It is well settled that an expert witness may testify as to the matters he or she relied upon in forming the opinion testimony. (*People v. Gardeley* (1996) 14 Cal.4th 605, 618 [*Gardeley*].) "Expert testimony may . . . be premised on material that is not admitted into evidence so long as it is material of a type that is reasonably relied upon by experts in the particular field in forming their opinions. [Citations.] Of course, any material that forms the basis of an expert's opinion testimony must be reliable . . . . [¶] So long as this threshold requirement of reliability is satisfied, even matter that is ordinarily *inadmissible* can form the proper basis for an expert's opinion testimony. (*In re Fields* (1990) 51 Cal.3d 1063, 1070 [expert witness can base 'opinion on reliable hearsay, including out-of-court declarations of other persons'] . . . . [B]ecause Evidence Code section 802 allows an expert witness to 'state on direct examination the reasons for his opinion and the matter . . . upon which it is based,' an expert witness whose opinion is based on such

inadmissible matter can, when testifying, describe the material that forms the basis of the opinion. [Citations; 2 McCormick on Evidence [(4th ed. 1992)] § 324.3, p. 372 [explaining that under rule 703, Fed. Rules Evid., which allows the expert to disclose to the trier of fact the basis for expert opinion, '[t]he result is that often the expert may testify to evidence even though it is inadmissible under the hearsay rule.'].)" (*Gardeley,* at pp. 618–619.) And, an expert may render an opinion based on "facts given 'in a hypothetical question that asks the expert to assume their truth.' [Citation.] Such a hypothetical question must be rooted in facts shown by the evidence . . . ." (*Id.* at p. 618.) We review the trial court's determination on the admissibility of expert opinion testimony for abuse of discretion. (*Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1168.)

Here, White consistently testified that in arriving at her opinion, she relied primarily on the physical evidence, Vitushkina's medical records, the accident reconstruction, inspection of the van and intersection, the police report, and the statements of witnesses. Vitushkina suggests that the trial court should not have permitted White's testimony concerning the contents of the driver's hearsay statements because it disclosed inadmissible hearsay to the jury. As Luminalt points out, however, Vitushkina invited any error concerning the hearsay evidence because she introduced the evidence in her case in chief. (See *People v. Harrison* (2005) 35 Cal.4th 208, 237 [defendant invited any error in admission of witness's hearsay statements by eliciting the statements on cross-examination], see also, Evid. Code, § 356 ["Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party . . . ."]

Vitushkina offered the testimony of Fogarty who interviewed the driver at the scene and subsequently obtained Franko's statement from the other officers who responded to the scene. Despite Luminalt's hearsay objection which the court sustained, Fogarty testified that after speaking to the driver, he was alerted to a smudge on the dirt covering the left front of the van, that both the driver and Franko said the van was travelling westbound on 17th Street, making a left turn to southbound Noe Street, and

6

that neither saw anyone in the crosswalk prior to the accident. Fogarty also testified that both the driver and Franko said that they believed Vitushkina had come out into the intersection from between parked cars. Fogarty also testified that the driver said he hit "her" and that the left front of the vehicle made contact with her. Counsel for Vitushkina initially objected to the driver's statement that he did not see Vitushkina before the accident, but later withdrew his hearsay objection. In addition, Fogarty's report of the accident was admitted into evidence. That report included Fogarty's summary of the statements of the driver and Franko. On this record, Vitushkina cannot now complain that the hearsay statements were erroneously admitted.

Vitushkina also argues that Luminalt's counsel used hypotheticals that assumed facts that were not in evidence in posing questions to White, its expert witness. She asserts that counsel incorrectly assumed in his hypotheticals that she walked into the street heading west from between parked cars. In addition, she faults the hypotheticals used for not including certain facts which she claims were uncontroverted, including that she was struck inside the crosswalk and that one of her shoes was in the crosswalk after the collision.

An expert's opinion must be based " 'either on facts personally observed or on hypotheses that find support in the evidence.' [Citations.]" (*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 44.) "A hypothetical question need not encompass all of the evidence. 'It is true that "it is not necessary that the question include a statement of all the evidence in the case. The statement may assume facts within the limits of the evidence, not unfairly assembled, upon which the opinion of the expert is required, and considerable latitude must be allowed in the choice of facts as to the basis upon which to frame a hypothetical question." [Citation.] On the other hand, the expert's opinion may not be based "on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors . . . ." ' [Citation; see also 3 Witkin, Cal. Evidence (4th ed. 2000) Presentation at Trial, § 194, p. 258 ['The traditional method of taking the opinion evidence of an expert is the hypothetical question. This may be framed on any theory that can be deduced from the evidence, and the questioner

may assume any facts within the limits of the evidence and omit any facts not deemed material.'].)" (*People v. Vang* (2011) 52 Cal.4th 1038, 1046.)

Here, the hypothetical questions posed to White were based on facts which could be deduced from evidence. While the questions addressed a factual pattern which was contrary to Vitushkina's theory that she was in the crosswalk when the accident occurred, they were not based on conjecture or "fabricated" facts but rather on the testimony of Franko, Fogarty, and the police report. No error appears.

Moreover, the hearsay statements of the driver and Franko were not offered for the truth of the matter, but simply served as one of the bases for White's expert opinion. (See *People v. Thomas* (2005) 130 Cal.App.4th 1202, 1210 [no error in use of hearsay statements as they were not offered to establish the truth of the matter asserted but merely as one of the bases for the expert witness's opinion].) The jury received a limiting instruction admonishing it regarding the limited use of hearsay statements relied upon by expert witnesses. The court gave a modified version of CACI No. 206: "Expert witnesses may rely on statements and reports made by other people as bases for their opinions. However, the testimony of an expert witness reciting the contents of such statements and reports is received only for the limited purpose of revealing the bases for the expert's opinions, to assist you in determining what weight to give those opinions. [¶] Generally, you may not assume that because an expert witness has relied on facts or recited in a statement or report made [by] another person that those facts are true. You must not consider such a fact for any purpose other than evaluation of the opinion of the testifying expert, unless the fact has been proven independently of the expert's testimony."

Vitushkina further contends that the prejudice resulting from White's testimony was not cured by the court's limiting instruction because it was confusing, given too late, and misstated the law. We cannot agree.

The court's modified version of CACI No. 206 was a correct statement of the law. Evidence Code section 355 provides that the court must instruct the jury, upon request, when evidence is admitted for a limited purpose. Where as here, the hearsay evidence

was not admitted for the truth of the matter but simply as one of the bases upon which the expert relied in forming her opinion, the courts have approved of a limiting instruction pursuant to Evidence Code section 355 "to control the jury's use of the information." (*Korsak v. Atlas Hotels, Inc.* (1992) 2 Cal.App.4th 1516, 1525.)

Vitushkina argues that the instruction was given too late after White's testimony. The court, however, at the time it overruled counsel for Vitushkina's hearsay objection to the evidence, did so on the grounds that the evidence was not being admitted for its truth but as a basis for the expert witness's opinions and conclusions. Vitushkina did not then request that the court admonish the jury as to the purpose for which the evidence was admitted. In light of the court's ruling on Vitushkina's hearsay objection, and the court's limiting instruction on the evidence, we cannot conclude that the court erred in its instructions.[4]

Vitushkina further faults White's testimony, arguing that it invaded the province of the jury because she opined on whether the driver could have done anything to avoid the accident. The trial court did not abuse its discretion in permitting the testimony.

"Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805.) Thus, while White opined that the driver would not have had time to avoid the collision given a driver's average perception reaction time, her opinion was based on her investigation of the accident scene, the van, the statements of witnesses, and the police report. It did not embrace the ultimate issue in the case but simply explained the defense theory on how the accident might have occurred.

In any event, the jury was free to reject the expert testimony provided it did not act arbitrarily. (*Conservatorship of McKeown* (1994) 25 Cal.App.4th 502, 509.) And, the

---

[4] Vitushkina's argument that the court's giving of CACI No. 208 [instructing jury that it must consider deposition testimony in the same manner as testimony given in court] immediately following CACI No. 206 created an ambiguity is without merit. CACI No. 208 is a correct statement of the law and clearly informs the jury the weight it is to give the testimony.

9

trial court instructed the jury pursuant to CACI No. 219 that it did "not have to accept an expert's opinion. As with any other witness, it is up to you to decide whether you believe the expert's testimony and chose to use it as a basis for your decision. You may believe all, part, or none of an expert's testimony. In deciding whether to believe an expert's testimony, you should consider: [¶] a. The expert's training and experience; [¶] b. The facts the expert relied on; and [¶] c. The reasons for the expert's opinion." We must presume that the jury followed the trial court's instructions. (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)

Finally, Vitushkina asserts that the trial court erred in denying her motions for a directed verdict and judgment notwithstanding the verdict. She argues that the driver's violation of Vehicle Code section 21950 constituted negligence per se and hence her motion for a directed verdict as to liability should have been granted. She further urges that the court should have granted judgment notwithstanding the verdict because there was no evidence controverting the facts that she was in the crosswalk when she was injured and the driver failed to yield the right-of-way to her.

"A directed verdict may be granted only when, disregarding conflicting evidence, giving the evidence of the party against whom the motion is directed all the value to which it is legally entitled, and indulging every legitimate inference from such evidence in favor of that party, the court nonetheless determines there is no evidence of sufficient substantiality to support the claim or defense of the party opposing the motion. . . ." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 629–630.) " 'A mere "scintilla of evidence" does not create a conflict for the jury's resolution; "there must be *substantial evidence* to create the necessary conflict." [Citation.]' " (*Quinn v. City of Los Angeles* (2000) 84 Cal.App.4th 472, 480, quoting *Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.) A directed verdict is appropriate when the opposing party's "proof raises nothing more than speculation, suspicion or conjecture." (*Dumin v. Owens-Corning Fiberglas Corp.* (1994) 28 Cal.App.4th 650, 654.)

In considering a motion for judgment notwithstanding the verdict, the trial court also applies the substantial evidence test. (*Bank of America v. Superior Court* (1990) 220

10

Cal.App.3d 613, 623–624.)  It construes the evidence in favor of the jury's verdict and against the party seeking judgment notwithstanding that verdict.  (*Hasson v. Ford Motor Co.* (1977) 19 Cal.3d 530, 546, overruled on another ground in *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574, 580; *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 284.)  On appeal, we apply the same standards to determine whether substantial evidence supports the jury's verdict.  (*Trujillo v. North County Transit Dist., supra,* 63 Cal.App.4th at p. 284; see *Hasson v. Ford Motor Co., supra,* 19 Cal.3d at p. 546.)

Here, the main issues in dispute were from which direction Vitushkina was travelling at the time of the accident and whether she was in the crosswalk.  While Vitushkina testified that she was on the way home from the restaurant, the accident occurred at approximately 3:43 p.m., well over two hours after she left the restaurant which was just a block away from where the accident occurred.  She testified that she was walking eastbound toward the intersection of 17th and Noe Streets and that the walk took her from five to 15 minutes.  White, the accident reconstruction expert, opined that Vitushkina was likely walking westbound on Noe Street prior to the accident and that she did not enter the crosswalk. White's opinion, which was based on the physical evidence and the statements of witnesses as well as biomechanical calculations, stressed that Vitushkina's injuries to her feet were not caused by an impact by the front of the van nor were they consistent with such an impact, but that Vitushkina was facing the left side of the van when the left rear wheel of it ran over her feet.  Her testimony was consistent with the statements of the driver and Franko that neither saw Vitushkina prior to the accident.  Further, Franko testified that Vitushkina collided with the van on its left side by the rear tire.

Vitushkina's reliance on *Gray v. Brinkerhoff* (1953) 41 Cal.2d 180, 184 is misplaced.  There, the evidence was undisputed that the defendant did not yield the right-of-way to the plaintiff who was walking in the crosswalk, saw the truck, and tried to hurry to reach the island in the middle of the intersection before she was struck.  (*Id.* at p. 183.)  The court determined that the driver's failure to yield the right-of-way to the

11

plaintiff constituted a violation of the Vehicle Code and "negligence as a matter of law" since there was no evidence that the plaintiff was contributorily negligent. (*Id.* at pp. 184–186.) The present case is distinguishable. Here, the evidence is in conflict as to whether Vitushkina was in the crosswalk and neither the driver nor Franko saw her in the intersection prior to the accident. Moreover, the evidence was disputed as to whether Vitushkina was hit by the front of the van or by its left side. The jury resolved the conflict in the evidence in Luminalt's favor. Based on the evidence before it, the jury had substantial evidence refuting Vitushkina's version of the accident and supporting a finding that the driver was not negligent.

## III. DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.

_____

Rivera, J.

We concur:

_____

Ruvolo, P.J.

_____

Reardon, J.

12