Filed 9/29/22 Pierce v. Gray CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JANA PIERCE, | |
| Plaintiff and Appellant, | G060104 |
| v. | (Super. Ct. No. 30-2015-00783934) |
| LANA THI GRAY et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Richard Y. Lee, Judge. Affirmed.

Kyle Scott Law and Kyle J. Scott for Plaintiff and Appellant.

James T. Shott & Associates, Paul Kevin Wood, Jennifer Leeper and Imran Khundkar for Defendants and Respondents.

Jana Pierce appeals from a judgment following a jury trial award of $3,500 in economic damages and no noneconomic damages to Pierce, based on a low-speed automobile collision. At the time of the collision, Pierce had been receiving treatment for her neck for a preexisting condition. At trial, she presented a doctor who testified both as Pierce's treating surgeon and medical billing expert witness. The trial court allowed defense counsel to ask the doctor about litigation he had been involved in regarding improper billing allegations. The doctor disclaimed knowledge and was later impeached by documents from the lawsuit.

Also at trial, defense counsel asked questions mentioning Pierce's workers' compensation insurance and disability benefits, and, during closing argument, asserted the doctor had committed perjury, and commented on the absence of testimony by two medical providers. The trial court precluded Pierce's presentation of certain illustrations during closing argument.

Pierce contends on appeal the judgment should be reversed for:
(1) inadequate damages; (2) improperly allowing the cross-examination and impeachment of the doctor; (3) judicial bias; and (4) misconduct by defense counsel.

We affirm. Pierce has not carried her burden to show the jury's award was inadequate as a matter of law, that the cross-examination and impeachment of Pierce's doctor was unduly prejudicial, or that the trial court was biased. Although we agree defense counsel committed misconduct, we conclude Pierce has not carried her burden to show it is reasonably probable that in the absence of defense counsel's misconduct Pierce would have obtained a more favorable result.

2

FACTS

I. *Auto Collision Incident and Trial Context*

In September 2014, Pierce's vehicle was rear-ended by Lana Thi Gray's vehicle at a red light stop (the 2014 accident). Pierce's vehicle registered a three and one-half miles per hour collision. The following day, Pierce went to Hoag Urgent Care for medical attention. She had a preexisting medical condition in her neck that began two decades earlier. At the time of the accident, Pierce had been receiving periodic medical treatments from pain management specialist Dr. Standiford Helm and had been receiving workers' compensation insurance and disability benefits for an existing condition.

Eight days after the accident, Pierce began receiving medical care from Dr. Gerald Alexander, a spine surgeon who treated Pierce on a lien basis. In May 2015, Alexander and his medical corporation were named as defendants in a third amended complaint, styled "State Compensation Insurance Fund v. Michael D. Drobot, Sr., . . . Michael R. Drobot, Jr., . . . Pacific Inc. d/b/a Pacific Hospital of Long Beach . . . Southwestern Orthopaedic Medical Corp . . ." (the Drobot lawsuit), alleging improper medical care billing by healthcare providers. Alexander and his corporation were subsequently dismissed after a court-approved settlement. On cross-examination, Alexander disavowed any knowledge of the Drobot lawsuit.

Pierce filed her complaint in this case in April 2015 and in 2016 underwent a cervical spine fusion surgery performed by Alexander. In 2017, a jury trial for Pierce's case resulted in an award of $10,000 to Pierce, comprised of $2,000 in economic damages and $8,000 in noneconomic damages. She appealed and we reversed because the trial court's rulings about evidence that could be presented on the reasonable value of Pierce's medical treatments had improperly limited the jury's decision about how much it could award Pierce. (*Pierce v. Gray* (May 2, 2019, G055432) [nonpub. opn.].)

3

The second jury trial, which underlies this appeal, was conducted in 2020. Relevant to this appeal, the defense's motion in limine to prohibit evidence about liability insurance was granted and no motion was filed by either party regarding the Drobot lawsuit.

II. *Trial Testimony and Impeachment*

Alexander testified as both Pierce's treating surgeon and medical billing expert witness. On cross-examination, defense counsel asked Alexander if he remembered testifying in the first trial that plaintiff's counsel had referred him patients. Alexander responded he may have said that and explained he does not keep track very closely; he conceded there may have been a few. Defense counsel then began a question asking Alexander about fraudulent medical billing claims against him. The question was interrupted when Pierce's counsel objected without stating grounds, but the court allowed the question to proceed. The complete question asked if Alexander had settled his fraudulent medical billing lawsuit. Pierce's counsel again objected, indicating "this isn't [] proper."

The court ruled a proper foundation would need to be laid and defense counsel asked, "Now, you were sued under RICO charges for fraudulent medical billing, correct?"[1] There was another objection and Pierce's counsel said, "This is -- isn't an appropriate matter for [defense counsel] to be raising in front of the jury."

The parties and trial court held a conference outside of the jury's presence to discuss the line of questioning. Pierce's counsel conceded no motion in limine had been made regarding the Drobot lawsuit but argued defense counsel's line of questioning should be prohibited because requiring Alexander to testify about the lawsuit would be

---

[1] "RICO" is generally known as the acronym for the Racketeer Influenced and Corrupt Organizations Act, codified as Title IX of the Organized Crime Control Act of 1970. (18 U.S.C.A. §§ 1961 to 1968.)

4

more prejudicial than probative. Defense counsel responded: "It goes, basically, to show the billing and [Alexander's] credibility regarding any billing matters, which is opinion regarding billing parties, and the fact that he's testifying that he's billing at a rate that's even higher than what he is essentially saying it's worth, because he's saying that he – he just said he overcharges."

The trial court found the timing of the Drobot lawsuit allegations and Alexander's treatments for Pierce sufficiently close, and therefore, entertained Pierce's counsel's argument on why the prejudicial impact about defense counsel's line of questioning outweighed the probative value. Pierce's counsel claimed defense counsel was improperly conducting discovery in front of the jury and that the questioning assumed facts not established.

The trial court stated: "I agree that [defense counsel's] question has been positive to this point, has -- is improper. I'll agree with you there." The judge sustained the objection to the initial question on the Drobot lawsuit but, allowed limited questioning to proceed. The court then admonished the jury to disregard the prior question. The court reminded the jury the attorneys' questions are not evidence. The court then inquired if the instruction was clear to everyone and noted jurors nodding their heads.

When defense counsel asked Alexander about the Drobot lawsuit, he denied knowledge of it. When asked if he was named in a lawsuit by the California State Compensation Insurance Fund for fraudulent medical billing, Alexander asked during what time period and was told around 2015 and 2016. Alexander said, "No." Defense counsel asked about prior to 2015 and Alexander again said, "No." When asked if he was aware of Pacific Hospital in Long Beach, he said he was.

5

Defense counsel asked if he was named in a lawsuit with Pacific Hospital of Long Beach by the California State Compensation Insurance Fund, and Alexander said, "No." Asked if he was named in a lawsuit with Southwestern Orthopaedic Medical Corporation by the California State Compensation Insurance Fund, Alexander said, "No." Asked if he was named in a lawsuit with a Dr. Drobot by the California State Compensation Insurance Fund for fraudulent medical billing, Alexander again said, "No." When defense counsel asked if he had ever been named in a lawsuit by the California State Compensation Insurance Fund, Alexander said, "Not that I'm aware of." Alexander was then asked if he has ever been named in a lawsuit for RICO, and he said, "No." Pierce's counsel objected, again without stating grounds, and the record reflects there was no ruling from the court.

Defense counsel continued with her next question, asking Alexander if he had ever been named in a lawsuit for "medical fraud -- billing fraud," and Alexander said, "No." Defense counsel asked him if he had ever been named as a defendant in any case regarding medical billing, and Alexander answered, "Not that I am aware of."

After further cross-examination, Pierce's counsel conducted a brief redirect examination of Alexander that did not mention the Drobot lawsuit. The trial court excused Alexander from the witness stand subject to recall by the court. The following day, defense counsel requested the court to order Alexander to reappear for testimony, to impeach his testimony about his knowledge of the Drobot lawsuit. As an offer of proof, defense counsel provided copies of the lawsuit showing Alexander and his company were named as defendants, a proof of personal service of the lawsuit on Alexander, and a motion to approve Alexander's settlement in the lawsuit.

In response, Pierce's counsel argued he did not "know the bases yet why Dr. Alexander said no," in response to defense counsel's questions about whether the

doctor had been sued. Counsel posited: "It could be because [Alexander]'s -- because he's very precise; it could be the way that [defense counsel] phrased her questions."

Pierce's counsel argued the proposed line of impeachment questioning would be more prejudicial than probative to Pierce's personal injury action. Counsel also pointed out the settlement was confidential and under seal in the court where the Drobot lawsuit was litigated. Defense counsel responded that Alexander had not asserted he could not talk about the lawsuit but denied outright that he had been a named defendant.

The trial court stated defense counsel was entitled to cross-examine Alexander "to have him explain why he answered the way he did." The court explained it was inclined to rule that admitting the entire complaint and settlement motion would be unduly prejudicial but that a redacted version of the complaint's cover page containing Alexander and his company's name as defendants could be admitted.

Pierce's counsel responded: "I guess I will have to call Dr. Alexander and find out if he has a response back." Later that day, Pierce's counsel reported he had talked to Alexander who asserted he had been "absolutely truthful and correct in his answers" about the Drobot lawsuit. Counsel stated Alexander communicated he had not been aware of the lawsuit and that in any case it represented a baseless charge against him.

After further discussion, the trial court stated: "I'm saying if [Alexander] makes a statement on the witness stand and [defense counsel] has extrinsic evidence that shows that that statement is false, I think [defense counsel is] entitled to present that, isn't she?" Pierce's counsel responded: "I don't think so, your Honor."

The trial court explained its inclination to Pierce's counsel as follows: "[Defense counsel is] going to be able to publish to the jury the caption page of what I understand is a civil complaint, which lists the plaintiff's name and Mr. -- or Dr.

7

Alexander's name and the name of his medical practice, along with the charges in the caption heading." The court then advised counsel he either needed to recall Alexander so defense counsel could attempt to impeach him, or the court would allow defense counsel to present documentary evidence of the lawsuit to the jury. The court advised Pierce's counsel that if the doctor returned to testify, the court would preclude defense counsel from presenting the documentary evidence.

The trial court concluded by telling plaintiff's counsel, "You have a choice to make." The court also indicated that if Pierce's counsel was willing to stipulate there was a case where Alexander was named as a defendant and what the charges were, the court would not allow the defense to present evidence on the matter. The court explained the problem was that Alexander denied the lawsuit "very adamantly in many, many different iterations and different ways." The court indicated it was attempting to find a balance and explained that, considering the prejudicial impact, the court would not allow 150-plus pages of complaint or multiple different pleadings from the lawsuit to be presented to the jury. The court added the defense should be allowed to challenge Alexander's credibility.

Pierce's counsel requested the trial court to wait until he reviewed the official reporter's transcript of Alexander's testimony. The court indicated it had no problem with that. But the court clarified, if defense counsel has extrinsic evidence that contradicted the doctor, the court believed the defense was entitled to present it.

The following day, Pierce's counsel stated he had reviewed the reporter's transcript and was requesting the trial court to declare a mistrial based on defense counsel's cross-examination questions to Alexander. The court denied the motion, recounting that Alexander testified "about his expertise in establishing what's a reasonable fee." The court reiterated that defense counsel had a good-faith basis to ask

8

questions about the Drobot lawsuit regarding billing practices, and that Pierce's counsel did not object to that questioning.

After the trial court ordered Alexander to appear in court to testify, Pierce's counsel was given an opportunity to contact Alexander and reported he was unable to do so. After more discussion, the court allowed counsel to reconsider the court's earlier proposal to have a redacted copy of the Drobot lawsuit caption and proof of personal service on Alexander (collectively the impeachment documents) admitted without re-calling him for testimony. After verbalizing his understanding of the terms, Pierce's counsel agreed, stating: "Okay. We'll proceed in that way, your Honor."

Four days later, after evidence had closed and before closing arguments began, the trial court advised the jury on publishing the impeachment documents. The court reminded the jury it had heard a number of questions from counsel inquiring of witnesses if they were ever accused or aware of allegations of improper billing practices and other bad acts. The court admonished the jury it had earlier indicated, and was again advising the jury, that questions of the attorneys were not evidence. The jury was not to consider the questions of the attorneys as evidence and could only consider questions to the extent they assisted the jury in understanding the witness's answers.

The court then specifically referred to the defense asking Alexander during cross-examination a number of questions about a lawsuit where the State Compensation Insurance Fund was named as a plaintiff and Alexander was named as a defendant, including Alexander's awareness and knowledge of that lawsuit. The court indicated the defense was "about to introduce into evidence an exhibit which is a few pages from a lawsuit that lists the State Compensation Insurance Fund as a plaintiff and Gerald Alexander, M.D. and others as defendants." The court admonished the jury the exhibit was only being admitted for the limited purpose of evaluating the credibility of

9

Alexander's testimony in this case. The court repeated the exhibit was being admitted for the sole limited purpose of evaluating the credibility of Alexander's testimony in the present case.

The court went on to instruct the jurors they should not and must not speculate as to the issues the lawsuit raised, the merits of that lawsuit, what the outcome of that lawsuit was, if any, or anything else relating to the lawsuit. The jury was only to consider the exhibit as evidence of the existence of such a lawsuit and whether the existence of such a lawsuit affected its determination of Alexander's credibility and testimony in the present case.

III. *Closing Arguments and Motion for New Trial*

During closing arguments, Pierce's counsel discussed, among other things, trial testimony, Pierce's medical treatment evidence, and a jury instruction on preexisting injuries. Counsel discussed Pierce's claimed neck injuries and the conflicting medical opinions of Alexander and spine surgeon Dr. Nitin Bhatia, the defense's expert witness. In his trial testimony, Bhatia did not dispute Pierce's chronic neck pain complaints but opined their source was not something medically caused or changed by the 2014 accident, based primarily on his comparative analysis of Pierce's pre and postcollision magnetic resonance imaging (MRI).

Pierce's counsel asserted a jury award of $222,200 for past economic damages and $300,000 for past noneconomic damages would be reasonable. When arguing about future damages, counsel presented the jury with multiple visual slides which the trial court instructed the jury to disregard. Counsel suggested a total award of $778,700 to Pierce.

During defense counsel's closing argument, she repeatedly asserted that Alexander committed perjury. Defense counsel told the jury Pierce's counsel had said

Pierce was stable before the 2014 accident and life was good. Defense counsel commented the evidence showed that three weeks before the accident, Pierce was having headaches three to four times a week. She was prescribed Norco and Vicodin. She could not work at a computer for more than 10 minutes at a time and she could not carry more than 12 pounds. Counsel then posed a rhetorical question, asking if Pierce was doing so well those three weeks before the accident, why was another epidural injection ordered three weeks before the accident.

Also during closing argument, defense counsel commented on the absence of medical care provider witnesses. Counsel remarked to the jury it had not heard from Helm, Pierce's pain management specialist, who Pierce saw prior to the accident. Pierce's counsel objected, indicating it was improper argument for counsel to comment on witnesses who did not testify. The court overruled the objection. Defense counsel reiterated the jury did not hear any testimony from Helm.

Defense counsel argued Pierce told her husband how much pain she was in after the accident, but there was no evidence of medical treatment on the day of the accident. Pierce did not go to the hospital, did not go to urgent care, and did not go to a doctor. Defense counsel then commented there was evidence Pierce went to Hoag Urgent Care the following day, and again indicated Pierce had failed to call a witness from Hoag Urgent Care. Defense counsel concluded by arguing there was no change in Pierce's condition as a result of the accident.

After deliberation, the jury awarded Pierce $3,500 in past economic damages and no noneconomic damages and the trial court entered judgment. Pierce then moved for a new trial or, alternatively, an additur of $722,000. After the trial court denied the motion, Pierce timely appealed.

## DISCUSSION

### I. *Appellate Principles*

While Pierce's different contentions call for different standards of review, we apply to all of her contentions "three fundamental principles of appellate review: (1) a judgment [or order] is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error. [Citations.]" (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58 (*Fladeboe*).) Additionally, Pierce must support her contentions with adequate analysis and citation to the record. (Cal. Rules of Court, rule 8.204(a)(1)(B) & (C).)

### II. *Inadequate Damages Contention*

We apply the above presumption of correctness to Pierce's contention that "[t]here is no logical basis for the jury or the trial court to conclude that Pierce's pain and suffering [was] zero." Under the substantial evidence standard of review (*Dodson v. J. Pacific, Inc.* (2007) 154 Cal.App.4th 931, 935-936), we """""look[] only at the evidence supporting the successful party, and disregard[] the contrary showing.""""" (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465 (*Sonic*), internal citations and italics omitted.)

"'In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This follows because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case [citations].

"'Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."' [Citation.]" (*Sonic, supra*, 196 Cal.App.4th at pp. 465-466.) In other words, Pierce must show the judgment should be reversed because the jury awarded insufficient damages as a matter of law. (See *Miller v. San Diego Gas & Electric Co.* (1963) 212 Cal.App.2d 555, 558-559 ["Every case depends upon the facts involved"].)

Pierce has not shown the trial evidence compels a conclusion the jury was required to award noneconomic damages as a matter of law. There was substantial evidence of Pierce's preexisting condition and history of medical care and pain management care prior to the 2014 accident. The evidence demonstrated Pierce required medical treatment and was experiencing pain and suffering prior to the collision. The defense expert, Bhatia, did not dispute Pierce's chronic neck pain complaints but opined their source was not something medically caused or changed by the accident. The jury's verdict was consistent with the opinion.

That the jury only awarded minimal economic damages is telling. The jury's verdict can reasonably be viewed as finding Pierce incurred economic damages for diagnostic tests and exams but did not require treatment or experience pain and suffering as a result of the 2014 accident, given her undisputed preexisting condition. For example, the record shows Pierce incurred a $500 initial doctor consultation and also underwent an MRI that Alexander valued at $1,500. The record is not clear about the specific charge for Alexander's initial consultation, but Bhatia testified a reasonable

13

charge for an initial consultation with an orthopedist could be $1,000. These charges, given potential inflation over the six years since the costs were incurred, may explain how the jury arrived at $3,500 in economic damages. The issue is not whether the trial evidence squares precisely with the economic damages decided by the jury, but whether there is support in the evidence for the amount they reached.

Because the minimal economic damages did not compensate Pierce for the cost of the surgery she argued was caused by the accident, it can be inferred the jury found the 2014 accident was not what necessitated the surgery. (*Fladeboe, supra*, 150 Cal.App.4th at p. 58; see *Choate v. County of Orange* (2000) 86 Cal.App.4th 312, 332-333 [generally, "'a judgment will not be reversed for a failure to award nominal damages'"].) Pierce has failed to overcome the presumption of correctness, particularly given that she does not discuss the evidence that was presented on the reasonable value of diagnostic services she received, which may be the explanation for the jury's marginal award of past economic damages. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [record is presumed to contain evidence sustaining every factual finding and appellants' failure to "set forth in their brief *all* the material evidence" results in forfeiture of the appellate contention].) She has not met her burden to demonstrate the jury's award shows reversible error.

III. *Evidentiary Rulings*

Next, Pierce argues the trial court erred by allowing Alexander to be cross-examined and impeached based on the Drobot lawsuit. Specifically, Pierce asserts: (1) "Alexander should have never been asked about the [Drobot] lawsuit at all, as it was irrelevant and not brought up on direct examination"; (2) "[a]t a minimum[, Alexander] should have been shown the lawsuit by [defense counsel] to allow him to explain or deny it"; and (3) a "witness must have an opportunity to explain or deny [a prior inconsistent]

14

statement." We presume a trial court's evidentiary rulings were correct (*People v. Alvarez* (1996) 49 Cal.App.4th 679, 694) and review them for abuse of discretion (*Pannu v. Land Rover North America, Inc*. (2011) 191 Cal.App.4th 1298, 1317).

In general, "evidence relevant to the credibility of a witness" can be admitted at trial (Evid. Code, § 210) and "[e]xcept as otherwise provided by statute . . . [a] jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of [the witness's] testimony at [a] hearing" (Evid. Code, § 780). As with all relevant evidence, the trial court retains discretion to admit or exclude evidence offered for impeachment of an expert witness. (Evid. Code, § 352.)

Moreover, it ""is well settled that the scope of cross-examination of an expert witness is especially broad . . . ." . . . [Citation.]' (*People v. Peoples* (2016) 62 Cal.4th 718, 746.) It is therefore permissible to 'cross-examine an expert witness more extensively and searchingly than a lay witness, and . . . to attempt to discredit the expert's opinion.' [Citations.]" (*People v. Nieves* (2021) 11 Cal.5th 404, 451; Evid. Code, § 721, subd. (a); see Pen. Code, § 1102 ["The rules of evidence in civil actions are applicable also to criminal actions, except as otherwise provided in this code"].)

Under Evidence Code section 352, the trial court is required to balance the probative value against the potential prejudicial effect, upon a timely and specific objection. (*Robbins v. Wong* (1994) 27 Cal.App.4th 261, 264, 274.) "An exercise of discretion under Evidence Code section 352 will be disturbed on appeal only if the trial court exercised it in an arbitrary, capricious, or patently absurd manner resulting in a manifest miscarriage of justice. [Citation.]" (*Boeken v. Philip Morris, Inc*. (2005) 127 Cal.App.4th 1640, 1685.)

At the outset, we note Pierce does not dispute the accuracy of the impeachment documents with respect to Alexander. We also note the trial court appropriately sustained defense counsel's initial objection to the question about the Drobot lawsuit and issued a curative instruction to the jury.

Pierce has not shown the trial court abused its discretion in allowing defense counsel a limited scope of questioning about the Drobot lawsuit because the court reasonably decided the matter was relevant to Alexander's qualifications as an expert witness. As the court explained during its discussion with counsel, Alexander was designated by Pierce as an expert witness and presented opinion testimony to the jury about the reasonable value of the medical bills Pierce had incurred, including Alexander's own services billed by his office. It is not disputed the subject matter of the Drobot lawsuit involved the validity of Alexander's medical billing practices and that the court reasonably found a temporal proximity between the lawsuit allegations and Alexander's billed treatments for Pierce.

After Alexander denied knowing about the Drobot lawsuit, the record supports the trial court's decision to authorize further cross-examination through recall for impeachment purposes. Further cross-examination was the first option the court offered. The court indicated that if Alexander would not subject himself to further cross-examination, the court would allow only a redacted version of the caption page, which listed Alexander's name and the name of his medical practice. It would not allow the complaint in its entirety to be published to the jury. As noted, Pierce's counsel ultimately stipulated to allowing the jury to consider the impeachment documents as an alternative to further cross-examination.

"The two crucial components of [Evidence Code] section 352 are 'discretion,' because the trial court's resolution of such matters is entitled to deference,

16

and 'undue prejudice,' because the ultimate object of the [Evidence Code] section 352 weighing process is a fair trial." (*People v. Harris* (1998) 60 Cal.App.4th 727, 736, 737-741.) Here, the record reflects the court engaged in the appropriate weighing process and determined the evidence was relevant and not unduly prejudicial. We discern no abuse of discretion.

We reject Pierce's assertion that publication of the documents was based on error for denying Alexander a right to "explain or deny" the documents. The court did not preclude Alexander from testifying further on cross-examination. For reasons unknown, Alexander did not avail himself of the opportunity to return for further examination and explain his previous answers.

Pierce's other argument is also unavailing. She asserts the court allowed an invalid form of impeachment because the impeachment documents lack a predicate prior inconsistent statement and, therefore, "did not comply with Evid[ence] Code [section] 780[, subdivision,](h)."[2] As noted, the statute states that "[e]xcept as otherwise provided by statute . . . [a] jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of [the witness's] testimony at [a] hearing . . . ." (Evid. Code, § 780.) Pierce's argument fundamentally misunderstands the statute, which states that its list of matters a jury may consider "includ[es] but [is] not limited to" its enumerated categories. (*Ibid.*)

---

[2] Pierce for the first time in her reply brief also contends the impeachment documents violated Evidence Code section 770, subdivision (a). We decline to entertain the contention. (See *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894-895, fn. 10 [""'points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before"'"].)

IV. *Judicial Misconduct Claim*

Next, Pierce claims the trial court made "demeaning and at times threatening remarks about" her counsel during trial. We review the issue de novo. (*Wechsler v. Superior Court* (2014) 224 Cal.App.4th 384, 391-392; *Briggs v. Superior Court* (2001) 87 Cal.App.4th 312, 319; see also *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 383, fn. 8 [holding independent standard of review applies to arbitrator's appearance of bias].)

"While trial counsel is entitled to argue his interpretation of the evidence to the jury, he has no right to cite facts unsupported by the evidence." (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1246 (*Las Palmas*).) More fundamentally, "[a]s a general rule, a specific and timely objection to judicial misconduct is required to preserve the claim for appellate review. (*People v. Geier* (2007) 41 Cal.4th 555, 613, overruled on other grounds in *Melendez–Diaz v. Massachusetts* (2009) 557 U.S. 305.) Although defendant argues he may be excused from this general rule because an objection would have been futile, the circumstances in no way suggest an objection and a request to have the jury admonished would have found an unsympathetic jurist." (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1320.)

We discern no objection by Pierce claiming judicial misconduct during the trial proceedings. She therefore forfeited for our review her contention the trial court unduly prejudiced her case. Notwithstanding, we note that even if Pierce had properly preserved her contention, it would fail for a lack of an adequate record to review its merits. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 ["'Failure to provide an adequate record on an issue requires that the issue be resolved against'" an appellant]; see Cal. Rules of Court, rule 8.124(b)(1)(B).) Many of Pierce's assertions are based on the trial

18

court's preclusion of her presentation of illustrations to the jury. No copy of the illustrations are provided in the record.

Further, even if we reached the merits of Pierce's claims with the record we do have, we would not be persuaded. Trial courts have "broad discretion" to limit both the duration and scope of closing arguments. (*Herring v. New York* (1975) 422 U.S. 853, 862.) While it is generally correct that a party can implement aides when making closing arguments, the trial court is authorized to limit the type to those that are relevant to the evidence. From what we can review in the record, the court appeared to have reasonably decided what aides were not appropriate.

V. *Attorney Misconduct Claim*

Finally, we independently review Pierce's claim of attorney misconduct (*Lafrenz v. Stoddard* (1942) 50 Cal.App.2d 1, 9), which is comprised of three categories of defense counsel's trial conduct: (1) mentions of Pierce's insurance during witness examinations; (2) closing argument assertions that Alexander committed perjury; and (3) closing argument comments on the lack of witness testimony from Helm and someone from Hoag Urgent Care. We address each in turn but note at the outset it is not enough to claim an opposing counsel's "misconduct"—the appellant must also show sufficient prejudice to justify reversing a jury's decisions underlying the judgment. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)

A. *Insurance*

Pierce asserts defense counsel improperly engaged in witness examination by repeatedly mentioning the existence of Pierce's workers' compensation insurance and disability benefits. Asking witnesses questions intended to draw inadmissible testimony can constitute attorney misconduct. (See *People v. Warren* (1988) 45 Cal.3d 471, 482.)

19

Pierce claims defense counsel repeatedly examined Alexander and Pierce for the purpose of unduly prejudicing the jury against Pierce. She concedes she did not file a motion in limine as to the issues of worker's compensation or disability benefits, but asserts defense counsel's conduct violated the defense's own motion in limine that was granted to exclude mentions of liability insurance. We note that of the 10 instances when defense counsel mentioned the benefits, Pierce failed to object to four of them.

As an example of when an objection was timely raised, when defense counsel asked if Pierce's visit to Helm weeks before the accident was through her disability claim, Pierce's counsel objected and the objection was overruled. Pierce explained Helm was or is her pain management doctor. Defense counsel asked again, "Through your disability?" There was another objection that was sustained. Defense counsel's questions implicitly referenced worker's compensation or disability insurance.

Although we find defense counsel's references to Pierce's workers' compensation and disability benefits improper, the record does not support a conclusion defense counsel's cross-examination questions implicating the benefits unduly prejudiced the jury's decision-making. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800-805 [analyzing for miscarriage of justice].) In her opening argument, Pierce supported her "'eggshell plaintiff'" theory of her case by explicitly mentioning her disability status and, as Pierce notes in her briefing, the court twice instructed the jury with CACI No. 105, which provides: "You must not consider whether any of the parties in this case has insurance. The presence or absence of insurance is totally irrelevant. You must decide this case based only on the law and the evidence."

We presume the jury followed the instruction. (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 598.) More importantly, given the context of the arguments and trial evidence on Pierce's medical diagnoses, we conclude she has not shown the jury's

20

decision on the medical causation she needed to prove was unduly prejudiced by defense counsel's mentions of Pierce's workers' compensation insurance and disability benefits. Instead, the record supports a conclusion the verdict was anchored by the expert witness evidence on causation.

B. *Perjury*

Next, we consider Pierce's argument that defense counsel committed misconduct by using the concept of perjury to challenge Alexander's credibility at trial. An attorney "is entitled to comment on the credibility of witnesses based on the evidence adduced at trial." (*People v. Thomas* (1992) 2 Cal.4th 489, 529 [criminal prosecutor context].)

"In order to lawfully hold a person to answer on the charge of perjury under [Penal Code] section 118, evidence must exist of a 'willful statement, under oath, of any material matter which the witness knows to be false. [Citation.]' [Citation.]" (*Cabe v. Superior Court* (1998) 63 Cal.App.4th 732, 735, fns. omitted.) Given the undisputed sworn testimony of Alexander disclaiming knowledge of the undisputed Drobot lawsuit, the impeachment documents support a good faith basis for defense counsel to have asserted Alexander had testified untruthfully, but, although not prejudicial, defense counsel should not have told the jury Alexander committed a crime.

C. *Closing Argument Comment on Absence of Witnesses*

Finally, we analyze Pierce's assertion defense counsel committed misconduct by commenting during closing argument that Pierce had not presented testimony by her precollision pain management physician, Helm, and someone from Hoag Urgent Care, the first healthcare facility Pierce went to after the 2014 accident. Commenting on treating witnesses not called at trial can be understood as an accusation that the treated party was concealing evidence unfavorable to her case. We discern

21

nothing that prevented the defense from presenting testimony by Helm or a witness from Hoag Urgent Care, if the defense had decided to do so.

Although it is within the legitimate range of closing argument for counsel to comment on an opposing party's failure to offer stronger available evidence (Evid. Code, § 412; see CACI No. 203), it is improper for counsel to invite a jury to draw an adverse inference from the opposing party's failure to call a particular witness if the witness is equally available to both parties. (*Smith v. Covell* (1980) 100 Cal.App.3d 947, 956-957 ["This type of attorney misconduct invites juror speculation"].) Because the witnesses were equally available, Pierce is correct defense counsel's closing argument comments about Helm and Hoag Urgent Care were improper. Therefore, the trial court's overrulings of Pierce's objections to the comments were erroneous and we conclude defense counsel committed misconduct by commenting on the absence of these witnesses.

At oral argument, this court confronted defense counsel about her improper argument regarding witnesses who were not called. Given an opportunity to concede the error, she resisted. This is distressing because the law clearly indicates such comments are improper. We emphasize this point so as to dissuade counsel from engaging in such misconduct in future trials. We caution that, although not sufficient on this record for Pierce to prevail, misconduct can result in an adverse finding on appeal.

Pierce appropriately cites to *Las Palmas, supra*, 235 Cal.App.3d at pages 1247-1248, to indicate a proper analytical framework for determining whether prejudicial attorney misconduct has been shown. Factors an appellate court must consider include the overall record, the nature and seriousness of the misconduct, any admonishments to the jury, and the strength of the offending attorney's case.

22

Notwithstanding, Pierce fails to apply the *Las Palmas* factors or otherwise show why we should agree with Pierce's position on prejudice. (*Martinez v. Department of Transportation* (2015) 238 Cal.App.4th 559, 568, quoting *Garcia v. ConMed Corp.* (2012) 204 Cal.App.4th 144, 149 ["In order to justify a new trial, the party must demonstrate that the misconduct was prejudicial"].) The only meaningful argument she presents on the closing argument comments about Helm and Hoag Urgent Care is her broad contention that "[e]ach instance of misconduct [asserted, including those about insurance and perjury,] justifies granting a new trial, but collectively the impact of all the instances of misconduct creates an overwhelming body of prejudice that cannot be denied."

Pierce's argument about a cumulative effect of multiple categories of errors is unavailing based on our discussion above, including our view that the verdict was anchored by expert witness evidence on objective data about causation. As noted, defense expert Bhatia did not dispute Pierce's subjective complaints but opined their source was not something medically caused or changed by the 2014 accident, based primarily on his comparative analysis of Pierce's pre and postcollision MRI's. We ultimately conclude Pierce has not carried her burden to show the requisite prejudice for her contention to compel reversal. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 [reasonable probability appellant would have obtained a more favorable result in the absence of error].)

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to recover costs on appeal.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


GOETHALS, J.